IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| TOM DUNNE, JR., | ) |
| Plaintiff, | ) Case No.  4:16-cv-01351<br>) Division No: |
| vs. | ) |
| RESOURCE CONVERTING, LLC, et al., | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER, OR ALTERNATIVELY, DISMISS PURSUANT TO RULE 12(B)(3)**

Plaintiff Tom Dunne, Jr. ("Plaintiff"), by and through counsel of record, for his Response in Opposition to Defendant Resource Converting, LLC, Tim Danley, and Rick Kersey's (collectively "Defendants"), Response in Opposition to Defendants' Motion to Transfer, or alternatively, Dismiss Pursuant to Rule 12(B)(3), and in support thereof, states as follows:

### I.      INTRODUCTION

**A.    FACTUAL BACKGROUND**

On or about May 20, 2015, Defendant Gary Brinkmann ("Brinkmann"), an employee of Defendant Sebright Products, Inc. ("Sebright"), individually and on behalf of Defendant Resource Converting, LLC ("Resource") and Sebright, began soliciting Plaintiff in Missouri with the objective of selling him certain rights and license agreements (the "License Agreements") to sell equipment (the "PAD Systems") in the St. Louis area.  These defendants claimed that the PAD Systems converted solid waste to biomass and ultimately to renewable fuels. See Affidavit of Plaintiff, attached hereto as **Exhibit A** ("Dunne Aff."), ¶ 2.  In furtherance of advertising the PAD Systems and the License Agreements, Brinkmann provided Plaintiff with a brochure entitled "Waste Conversion Systems with Proven Capabilities," which was purportedly authored by Resource, Sebright, Defendant JWR, Inc. ("JWR"), and Defendant NewWay Global Energy

26453994v2

LLC ("NewWay"). Dunne Aff., ¶ 3. The brochure falsely advertised the PAD Systems to be a "system using proven and tested technology to create a homogeneous dried fuel stock that can be converted into different forms of energy…" Dunne Aff., ¶ 3. See also brochure attached hereto as **Exhibit B.** Brinkmann, Resource, Sebright, JWR, and NewWay, along with their agents and representatives, namely the other named defendants in this Action, continually solicited payment from Plaintiff for the PAD Systems and License Agreements, employing high pressure sales tactics and giving consistent reassurances of the proven utility and value of the PAD Systems. Dunne Aff., ¶ 4. As a result of the assurances and representations made, Plaintiff entered into five (5) of the Licenses Agreements with Resource, the execution of which took place in Missouri, and submitted an initial payment of $400,000.00 for two (2) of the agreements on or about August 31, 2015. Dunne Aff., ¶ 4. The remaining three (3) License Agreement purportedly required an additional payment of $600,000 in November of 2015. See License Agreements attached hereto as **Exhibit C**.

In connection with the License Agreements, Plaintiff accompanied Defendants in the St. Louis and surrounding areas, on various sales calls, visiting potential customers and further marketing the sale of the PAD Systems. Dunne Aff., ¶ 5. Plaintiff went on over twenty sales calls with Defendants between the months of May 2015 and October 2015, almost all of which took place within the state of Missouri. Dunne Aff. ¶ 5. Out of the 28 meetings held regarding the License Contracts between Plaintiff, Defendants, and with other potential buyers of the PAD Systems, 25 were held in Missouri. A table describing the details of these meeting is attached hereto as **Exhibit D**.

However, during these various times Plaintiff had still yet to see a functioning PAD System; for that reason, several times between August 2015 to November 2015, Plaintiff insisted

26453994v2

upon seeing the PAD System operate so that he could confirm that the PAD System in fact was capable of reaching the production levels promised by these Defendants. Dunne Aff., ¶ 6. On several occasions throughout this time, Brinkmann, Resource, Sebright, JWR, and NewWay, along with Kersey and Danley, assured Plaintiff such a demonstration would take place. Dunne Aff., ¶ 6. At one point, Brinkmann, Kersey and other representatives of Resource, Sebright, JWR, and NewWay took Plaintiff into a barn and presented a partially-assembled piece of non-functioning equipment. Dunne Aff., ¶ 6. They continually failed and/or refused to provide a demonstration of the functioning equipment to Plaintiff. In light of this, Plaintiff later became suspicious of whether the PAD Systems with the promised capabilities ever existed and/or ever successfully operated. Dunne. Aff., ¶ 6.

On November 30, 2015, Brinkmann, Resource, Danley, Kersey, Sebright, JWR, and NewWay, along with other agents and representatives of said entities, all traveled to St. Louis, Missouri to meet with Plaintiff regarding the failure to provide evidence that the PAD System existed and performed as promised. Dunne. Aff., ¶ 7. Plaintiff offered to place the remaining $600,000 in License Agreement payments into escrow, pending a live demonstration of the PAD Systems operating as promised. Dunne Aff., ¶ 7. However, Defendants merely reiterated their previous false representations regarding the PAD Systems, refused to provide a demonstration of a functioning PAD System, and demanded full payment of the additional $600,000. Dunne Aff., ¶ 7. In early June 2016, Brinkmann ultimately admitted to Plaintiff that the PAD System never existed as represented and/or never functioned as promised. Dunne Aff., ¶ 8. In fact, Brinkmann indicated he had recently witnessed representatives of Resource trying to sell the same equipment at a trade show in Las Vegas, Nevada, representing the equipment as an entirely different brand and newly advertised system. Dunne Aff., ¶ 8.

26453994v2

**B.    PROCEDURAL HISTORY**

As a result, on June 20, 2016, counsel for Plaintiff submitted a demand letter to Brinkmann, Resource, Sebright, JWR, and NewWay, along with their representatives, including Kersey and Danley, demanding repayment of the $400,000 previously submitted by Plaintiff on or before June 30, 2016, and threatening legal action in the United States District Court for the Eastern District of Missouri if the $400,000 was not repaid by June 30, 2016. See demand letter attached hereto as **Exhibit E**. In response to Plaintiff's demand letter threatening litigation, on June 30, 2016, Resource commended an anticipatory action against Plaintiff in the Iowa District Court for Polk Count, Case No. LACL135500 (the "Iowa Action"). See Petition filed in the Iowa Action attached hereto as **Exhibit F**. The brief, basic, three-page petition, excluding any attachment or exhibits, alleged Plaintiff breached the License Agreements. *Id*. Plaintiff thereafter obtained litigation counsel. Dunne Aff., ¶ 8. On August 19, 2016, Plaintiff filed the instant action in the United States District Court for the Eastern District of Missouri against Resource, and other related individuals and entities, including Danley and Kersey, for Fraudulent Misrepresentations, Fraudulent Inducement, Unjust Enrichment, Civil Conspiracy, among other allegations. Dkt. No. 1. Plaintiff's Complaint in this action requests monetary relief as well as rescission of the fraudulently procured License Agreements. Dkt. No. 1.

On August 19, 2016, Plaintiff timely filed his notice of removal in the Iowa Action based on diversity jurisdiction under 28 U.S.C. §§1332(a)(1), removing the Iowa Action to the United States District Court for the Southern District of Iowa. See Notice of Removal attached hereto as **Exhibit G**. On September 23, 2016, Plaintiff filed, in the Iowa Action, his Motion to Dismiss or, Alternatively to Transfer Venue based on the convenience of parties and witnesses and the interests of justice, in attempt to remove the Iowa Action to the United States District Court for

-4-

the Eastern District of Missouri ("Iowa Motion to Transfer"). See Plaintiff's the Iowa Motion to Transfer attached hereto as **Exhibit H**. That Iowa Motion to Transfer is still pending with the Southern District of Iowa. On October 17, 2016, while the Iowa Motion to Transfer was still pending, Defendants filed their Motion to Transfer or, Alternatively, Dismiss Pursuant to Rule 12(b)(3) in attempt to transfer the Missouri Action to the United States District Court for the Southern District of Iowa. Dkt. No. 55.

C. CITIZENSHIP OF THE PARTIES

Plaintiff is a Missouri citizen and resident. Dunne Aff., ¶ 1. Sebright is a corporation incorporated under the laws of Michigan with its principal place of business, and therefore citizenship, in Michigan. See Sebright filing with the Michigan Secretary of State evidencing same is attached hereto as **Exhibit I**.

JWR is a corporation with a principal place of business, and therefore citizenship, in Wisconsin. See JWR filing with the Wisconsin Secretary of State evidencing same attached hereto as **Exhibit J**.

NewWay is a Wisconsin limited liability company with a principal place of business in Wisconsin. See NewWay filing with the Wisconsin Secretary of State evidencing same attached hereto as **Exhibit K**. According to NewWay's Corporate Disclosures filed in this action, NewWay 's members are Wolf Creek Holding, LLC, a Wisconsin citizen, Prime Time Holding, LLC, a Wyoming citizen, and Medford Holdings, LLC, a Wyoming citizen. Dkt. No. 37.

Resource is an Iowa limited liability company with its principal place of business located in Las Vegas, Nevada. See Resource filing with the Iowa Secretary of State's evidencing same attached hereto as **Exhibit L**. See also printout from Resource's website evidencing same attached hereto as **Exhibit M**. Resource has yet to file Corporate Disclosures in this action;

26453994v2

however, in the Iowa Action, Resource identified its members as Medford Holding, LLC, Prime Time Holding, LLC, and Maverick Solutions, LLC. See Corporate Disclosures in the Iowa Action attached hereto as **Exhibit N**. Resource failed to identify the members of those limited liability companies or their states of citizenship; however, NewWay identified two of those members in its Corporate Disclosures as Wyoming citizens (both Prime Time Holding, LLC and Medford Holdings, LLC). Dkt. No. 37. A search on the website of the Iowa Secretary of State indicates none of Resource's "members" are registered to do business in the State of Iowa.

## II.    ARGUMENT

Defendants have requested this Court transfer this action to the United States District Court for the Southern District of Iowa, pursuant to 28 U.S.C. § 1404(a), based on the first-filed rule. Alternatively, Defendants request this Court dismiss this action for improper venue based on the venue provision of the Licenses Agreements. For the reasons stated below, Defendants arguments favoring transfer, namely the first-filed rule and License Agreements venue provision, should not apply in this action. Additionally, the equitable factors considered by the Eighth Circuit for purposes of determining whether a venue transfer should be granted weigh heavily in favor of maintaining this action in the United States District Court for the Eastern District of Missouri.

District courts determining whether to grant a motion to transfer under § 1404(a) must consider three factors: "1) the convenience of the parties; 2) the convenience of the witnesses; and 3) the interest of justice." *Dube v. Wyeth LLC*, 943 F. Supp.2d 1004, 1007 (8th Cir. 2013) (citing *Terra Int'l v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). Courts are not limited to just these enumerated factors, and "they have recognized the importance of a case-by-case evaluation of the particular circumstances presented and of all relevant case-specific factors." *Id.*, at 1007 (citing *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010). Federal courts

26453994v2

place the burden on the "party seeking a transfer under section 1404(a) . . . [to prove] that a transfer is warranted." *Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, 598 F. Supp.2d 989, 994 (D. Minn. 2009).

A.     **Compelling Circumstances Exist that Support Ignoring the First-Filed Rule.**

In cases with concurrent jurisdiction, in the absence of compelling circumstances, the general rule is that the district court first obtaining jurisdiction over the parties should proceed to adjudicate the controversy, and the later-filed action should be extinguished. *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 792 F.Supp. 655, 658 (D. Minn. 1992). The first-filed rule, however, is not absolute, nor is it "intended to be rigid, mechanical, or inflexible." *Eveready Battery Co., Inc. v. L.P.I. Consumer Prods., Inc.*, 464 F. Supp.2d 887, 890 (E.D. Mo. 2006).

The 8th Circuit has presented numerous factors to be considered in determining whether "compelling circumstances" exist to abrogate the first-filed rule: (1) the first-filing party acted in bad faith, (2) the first-filing party raced to the courthouse to preempt a suit by the second-filing party, and (3) the first-filing party does not allege that the second-filing party's actions have had an adverse effect on the first-filing party." *Clergy Fin.*, F. Supp.2d at 994. The Eight Circuit has also described two "red flags" signaling potentially "compelling circumstances" which may warrant an exception to the first-filed rule. *Eveready Battery*, 464 F. Supp.2d at 890. The first of the two red flags is "where the first suit was filed after the other party gave notice of its intention to sue." *Id.* (citing *Boatmen's First Nat'l Bank v. Kansas Pub. Emps. Ret. Sys.*, 57 F.3d 638, 642 (8th Cir. 1995).

A red flag representing a compelling circumstance for purposes of ignoring the first-filed rule is clearly present in this case. As stated previously, Plaintiff, on June 20, 2016, obtained counsel and submitted to Defendants the demand letter attached hereto as Exhibit D, demanding repayment of the $400,000 on or before June 30, 2016, and **threatening legal action in the**

**United States District Court for the Eastern District of Missouri**. It is no coincidence that on June 30, 2016, the drop dead date outlined in the demand letter for Resource to submit repayment, Resource filed the Iowa Action. See Exhibit E. The skeletal form and brevity of the Petition filed by Resource in the Iowa Action further illuminates its intention to beat Plaintiff to the courthouse steps in effort to preserve the "first to file" status.

The Eighth Circuit analyzed similar facts in *Anheuser Busch, Inc. v. Supreme Intern. Corp.*, where Supreme had sent a cease and desist letter to Anheuser, demanding Anheuser stop exercising certain potential trademark infringements. 167 F.3d 417, 418 (8th Cir. 1999). Defendant demanded response within five (5) days, threatening legal action if no response was received. *Id*. Three (3) days after the five-day deadline had passed, Anheuser initiated a declaratory judgment action in the Eastern District of Missouri. The Eighth Circuit upheld the District Court's decision to refuse to apply the first-filed rule, as "the short period of time" in which Anheuser filed a lawsuit after receipt of the Supreme letter indicated a "[race] to the courthouse to usurp Supreme's forum choice." *Id*. at 419.

Just as in *Anheuser*, it is clear that Resource raced to the courthouse to file the Iowa Action in attempt to usurp Plaintiff's forum choice. Resource promptly filed a lawsuit the moment the threat of litigation by Plaintiff began, according to the terms of the demand letter. Filing the Iowa Action was undoubtedly anticipatory and responsive to the demand letter presented to Resource. This chain of events demonstrates that Resource "raced to the courthouse to avoid litigating in another forum," demonstrating "bad faith" that represents a "compelling circumstances" as explicitly set forth by the Eighth Circuit as a foundational basis for ignoring the first-filed rule. *Nw. Airlines*, at 658.

In keeping with its cursory treatment of the Iowa Actions, Resource has failed and/or

26453994v2

refused to respond to deadlines and requirements of that Court, as noted in the Iowa Action Motion to Transfer. *See* Ex. H. To this date it has failed to make the necessary corporate interests disclosures required to determine the citizenship and identity of the company. This further evidences the perfunctory nature of the Iowa Action as filed by Resource.

Defendants' Motion to Transfer and/or Dismiss cites *Clergy Financial* in support for their assertion that "the rights of the first-filing party [are] legitimately being damaged by the second-filing party with regard to the subject matter of the concurrent lawsuits." Plaintiff filed this action in attempt to rescind the License Agreement and seek monetary damages as a result of the numerous fraudulent misrepresentations and inducements outlined above; furthermore, Plaintiff did so in such a manner as to address all of these issues and all named defendants within one proceeding. Dkt. No. 1. Defendant Resource's rights under the License Agreement are not "legitimately being damaged", as the subject matter of this lawsuit is the misrepresentations regarding the functionality of the PAD Systems and the overall value and utility of the License Agreement, as outlined above.

Plaintiff is seeking transfer of the Iowa Action to this Court and seeks denial of Defendants' Motion to Transfer and/or Motion to Dismiss, not in attempt to deprive Resource of its rights under the License Agreement, but rather to assert Plaintiff's own rights surrounding the various solicitations, representations, and business transactions entered into in Missouri. Plaintiff is also seeking to simultaneously assert its rights against various additional Defendants not named as parties in the Iowa Action- the majority of which are not citizens of the State of Iowa and possibly not subject to the jurisdiction thereunder. In fact, two of the three Defendants requesting transfer in this action, Kersey and Danley, are not parties to the Iowa Action. Upon information and belief, Kersey is a resident of Florida and Danley is a resident of Texas. Of

26453994v2

course, Resource is free to attempt to prove its breach of contract claims in these proceedings.

The presence of at least one of the "red flags" exists here, representing a compelling circumstance under which the Eighth Circuit has explicitly supported abrogation of the first-filed rule. Defendants have failed to identify other sufficient factors to justify adhering to the first-filed rule, Defendants' Motion to Transfer based on the first-filed rule should be denied.

**B.      The Venue Provision of the License Agreements Should not Govern the Choice of Venue in this Action.**

In federal courts, "forum selection clauses are prima facie valid and enforceable." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). However, this Court is not required to enforce the venue provision in the License Agreement if it is found to be "unjust or unreasonable or invalid for reasons such as fraud or overreaching." *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) (citing *M/S Bremen*, 407 U.S. at 15). Forum selection clauses are unenforceable if they "deprive the opposing party of his fair day in court." *Id.*, at 752 (citations omitted). For reasons stated herein, the forum selection clause in the License Agreements should not be enforced as the results would unjust, unreasonable, and provide potentially inequitable results.

Plaintiff filed this action for rescission of the contract and monetary damages incurred as a result of the fraudulent representations outlined above. Dkt. No. 1. The choice of venue in the Eastern District of Missouri is simple – the only parties to the License Agreements which contains the venue selection provision on which Defendants rely, are Resource and Plaintiff. The Missouri Action names several additional parties whom were not parties to the License Agreements including, Brinkmann, Resource, Kersey, Danley, Sebright, JWR, Wolf, Flickinger, and NewWay, who do not appear in the Iowa Action. See **Exhibit F**.  Not one of the companies

-10-
26453994v2

named by Plaintiff in this action hold citizenship in Iowa, nor do they, to Plaintiff's knowledge, maintain any offices at all in Iowa. Additionally, all business transactions between Plaintiff and Defendants took place in Missouri.

That Plaintiff's Complaint in this action is based on the fraudulent misrepresentations, fraudulent inducements, and other fraudulent behavior exerted by all named Defendants cannot be ignored. Ultimately, Plaintiff seeks rescission of a contract which was induced by fraud. Plaintiff seeks the return of the moneys he paid to Resource when executing the first two License Agreements. Without a doubt, the venue provision of the License Agreements does refer to "any subject matter related hereto". However, the entire transaction between Plaintiff and the named Defendants was based on fraud, namely the nonexistence of a functioning PAD System; this was the entire essence of the Licenses Agreements. This fraud rendered the License Agreements void *ab initio*, and completely worthless. It would truly be inequitable, unjust, and unreasonable to transfer venue based on a provision found within the License Agreements, which was induced by fraud and invoked by the perpetrators of that fraud. Moreover, it is possible that many of the St. Louis-area witnesses to Defendants' actions may not be available to testify in Iowa.

It is also important to note that neither Kersey nor Danley are parties to the venue provision in the License Agreements. *See* Ex. C. Resource is the only Defendant of the three (3) that is a party to the License Agreements. As such, it would be improper to allow Kersey and Danley to rely on a provision in a License Agreement that they are not a party to, to support their argument that venue is only proper in the Southern District of Iowa pursuant to the License Agreement; namely, Licenses Agreements that they are not associated with.

Based on the above reasons and those set forth below, we believe that forcing a trial in Iowa of all or a part of Plaintiff's claims would result in significant inconvenience and difficulty,

-11-

such as would risk depriving Plaintiff of his fair day in court. Accordingly, Plaintiff requests this Court deny Defendants' Motion to Transfer and/or Dismiss, as the venue provision should be ignored and other, more pressing circumstances, weigh heavily in favor of maintaining venue with the Eastern District of Missouri.

C. **A Balancing of the Relevant Factors Favors Venue in the Eastern District of Missouri.**

When balancing the convenience factor for purposes of transfer analysis under § 1404(a), courts consider "(1) the convenience of the parties, (2) the convenience of the witnesses – including the ability to appear , . . . subpoena witnesses . . . (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." *Terra Int'l*, 119 F.3d at 696 (citing *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F.Supp. 1334, 1357-61 (N.D. Iowa 1996)). Taking these factors into consideration, for purposes of convenience to the Plaintiff, Defendants, and witnesses, weighs very heavily in favor of maintaining venue in the Eastern District of Missouri.

Plaintiff's choice of venue in the Eastern District of Missouri rested largely with the convenience of the parties and witnesses to this litigation. Only Plaintiff and Resource are parties to the License Agreements. *See* Ex. C. Notably, upon information and belief, not one of the companies named in the Missouri Action is a citizen of the State of Iowa, nor do they, to Plaintiff's knowledge, maintain any offices in Iowa. Almost the entirety of the communication and business Plaintiff had with Defendants took place in Missouri. As a result, Missouri maintains jurisdiction over all the defendants named by Plaintiff in this action. 28 U.S.C. § 1391(b)(2). Missouri is the only location Plaintiff could ensure jurisdiction over all the necessary parties. Any contention that Missouri would be an inconvenient forum lacks foundation, thwarted by Defendants' travel to Missouri and conducting various activities in Missouri to fraudulently solicit

Plaintiff's and third-parties' business. Dunne Aff. ¶¶ 2-7. To claim that Iowa would be a more convenient forum for the parties in this litigation cannot be supported by evidence, based on the nominal connections any of the parties to this action have with the state of Iowa.

Additionally, the vast majority of witnesses that will need to be investigated, deposed, and potentially testify in this matter are located in St. Louis and the surrounding areas in Missouri. *See* Ex. D. Plaintiff, along with Defendants, on more than twenty (20) occasions, pursuant to the License Agreements, met with many individuals not parties to this litigation to solicit the sale and purchase of the PAD Systems. Dunne Aff. ¶ 6. All of these individuals who were solicited by Plaintiff and Defendants are third-party witnesses to this action. The expense, time, and effort exerted by these witnesses, and inevitably the counsel they would be forced to hire, to relocate to Iowa for multiple portions of this litigation is immeasurable. In addition to the witnesses themselves, the record and documents associated with this action will rest almost in its entirety in Missouri.

Another basis for Plaintiff's choice of venue in the Eastern District of Missouri rested on the fact that Missouri is where the defendants' tortious conduct against him occurred. *See generally* Dunne Aff. Plaintiff was solicited in Missouri; he attended and conducted meetings with regards to the PAD Systems and License Agreements in Missouri. *Id*. Most importantly, Plaintiff rarely stepped foot in the state of Iowa to conduct any business. *Id*. Almost all of the Defendants' representations to Plaintiff regarding the License Agreements took place in Missouri. Additionally, virtually all phone calls, promotional materials, and emails were received by Plaintiff while in Missouri, further evidencing the fact that the tortious conduct took place in Missouri, and any documents and records in support of that will be located in the state of Missouri.

26453994v2

As to the substantive law in consideration in both actions, the contract and tort claims among the parties share common elements in Missouri and Iowa. *See, e.g., Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 735 ("The elements [for fraudulent misrepresentation] are: (1) [the] defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in [justifiable] reliance on the truth of the representation . . ., (7) the representation was a proximate cause of [the] plaintiff's damages, and (8) the amount of damages."). Plaintiff submits, given the similarity of the relevant Missouri and Iowa law, scant weight should be given, if any, to the substantive law factor. Again, lastly, Plaintiff's claims in the Missouri Action include the principle claims of fraudulent inducement of the License Agreements and calls for the rescission of same – the contracts which form Resource's only basis for jurisdiction in Iowa.

The majority of the Defendants lack any significant contact with Iowa, and the conduct alleged in Plaintiff's Complaint to this action all occurred in Missouri. The various witnesses to the Defendants' actions are located in Missouri, and the solicitations to those witnesses took place in Missouri, primarily within the St. Louis metropolitan area. The relevant substantive law does not differ greatly between Missouri and Iowa. Plaintiff submits that the balance of the traditional Section 1404 convenience factors weigh very heavily in favor of denying transfer to the United States District Court for the Southern District of Iowa.

**D.     Interests of Justice Favors Venue in the Eastern District of Missouri.**

When determining the where the interest of justice points as it relates to transfer of venue, consideration includes "judicial economy, the comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law

issues, and the advantages of having a local court determine questions of local law." *Waterway Gas & Wash Co. v. OneBeacon America Ins. Co.*, 2010 WL 3724854, at *3 (Sept. 16, 2010) (citing *Terra Int'l*, 119 F.3d at 696).

As set forth above, Resource's choice of forum was purely a litigation tactic and its filing was simply an attempt to leverage the favor bestowed on the first-filed forum. In an effort to address this issue, on September 23, 2016, Plaintiff filed for Transfer of Venue of the Iowa Action to the Eastern District of Missouri. That Motion is still pending in the Iowa Action. Judicial economy would not be served if entry of transfer in this action took place prior to a decision from the Southern District of Iowa. A ruling from this Court transferring venue to Iowa prior to the Court in the Iowa Action's opportunity to rule on the already pending Motion to Transfer would create confusion and may result in inconsistent rulings between these Courts. The only way to ensure consistent results between the two district courts is to deny this motion and allow the Southern District of Iowa to rule on Plaintiff's Transfer of Venue.

Further, as the majority of the Defendants are not citizens of the State of Iowa. They are citizens of Texas, Nevada, Michigan, Wisconsin, and possibly Florida. The comparative costs to the Defendants of litigating in Missouri versus Iowa is miniscule at best. In fact, due to access and transportation options to and from St. Louis, the overall costs may be significantly less. Finally, there would be enormous expenses to the nearly dozens of witnesses who are essential to this case, were they forced to travel from St. Louis to Iowa. As outlined above, the similarities in Iowa and Missouri law as it relates to this action renders the conflicts of law issue moot. Lastly, there are conveniences to the Defendants in maintaining jurisdiction here. Because Plaintiff is a resident of the state of Missouri, Resource's ability to enforce any judgment against Plaintiff would be greater in Missouri.

26453994v2

### III. CONCLUSION

As stated above, the first-filed rule should be ignored as compelling circumstances exist that have been the grounds for abrogation by the Eighth Circuit. Additionally, adhering to the forum selection clause in the License Agreements would result in unjust, unfair, and inequitable consequences based on the fraudulent nature of the business transactions between Plaintiff and Defendants. Furthermore, the traditional factors considered for purposes of venue transfer under §1404(a) of the Federal Rules of Civil Procedure, namely convenience of parties and witnesses and the interests of justice, weigh heavily in favor of maintaining venue in the United States District Court for the Eastern District of Missouri.

WHEREFORE, Plaintiff Tom Dunne, Jr. requests this Court deny Defendants Resource Converting, LLC, Tim Danley, and Rick Kersey's Motion to Transfer or, Alternatively, Dismiss Pursuant to Rule 12(b)(3), award his costs and expenses incurred herein, and provide such other and further relief the Court deems just and proper.

Dated: November 1, 2016

Respectfully Submitted,

**LATHROP & GAGE LLP**

By: */s/ Alicia M. Goedde*
Barry L. Haith (48972MO)
BHaith@LathropGage.com
Alicia M. Goedde (63911MO)
AGoedde@LathropGage.com
7701 Forsyth Boulevard, Suite 500
Clayton, Missouri  63105
314.613.2800; Fax: 314.613.2801

Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served via the Court's electronic filing system on this 1st day of November, 2016, upon counsel of record.

*/s/ Alicia M. Goedde*