UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| TOM DUNNE, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:16 CV 1351 DDN |
| RESOURCE CONVERTING, LLC, TIM DANLEY, RICK KERSEY, SEBRIGHT PRODUCTS, INC., GARY BRINKMANN, NEWWAY GLOBAL ENERGY, LLC, DAVID WOLF, JERRY FLICKINGER, and JWR, INC., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER
## DENYING MOTION TO TRANSFER

This action is before the court on the motion of defendants Resource Converting, LLC, Tim Danley, and Rick Kersey to transfer this action to the United States District Court for the Southern District of Iowa. (ECF No. 55). Following the hearing held on November 30, 2016, the court denies defendants' motion to transfer the case.

### I. BACKGROUND

In his judicial complaint plaintiff Tom Dunne alleges the following facts. In May 2015, defendant Gary Brinkmann contacted Dunne to sell him certain license agreements. (ECF No. 1, ¶ 16). These agreements would authorize and obligate plaintiff to acquire for resale "PAD systems" developed by defendants Resource Converting, LLC; Sebright Products, Inc.; and JWR, Inc., and sold by defendant NewWay Global Energy, LLC. (*Id.* at ¶ 17). The PAD systems are devices that would purportedly convert municipal solid

waste into renewable fuels.  (*Id.* at ¶ 16).  The systems were advertised to plaintiff as "using proven and tested technology to create a homogenous dried fuel stock that can be converted into different forms of energy."  (*Id.* at ¶ 19).  Defendant Jerry Flickinger gave plaintiff a "budgetary quote for a single line processing system to take municipal solid waste and prepare it for conversion to fuel," stating a single system was "capable of processing 250 tons per day."  (*Id.* at ¶ 20).  Brinkmann and Flickinger allegedly assured plaintiff repeatedly of the PAD systems' proven function and the substantial value of the license agreements.  (*Id.* at ¶ 21).

Plaintiff alleges that defendants Brinkmann, Flickinger, Danley, and Kersey solicited payment from him for the PAD systems and license agreements, and that they employed high-pressure sales pitches.  (*Id.* at ¶ 22).  As a result of defendants' assurances and representations, plaintiff entered into license agreements with Resource Converting in August 2015 and made an initial payment of $400,000 with an additional payment of $600,000 to be made in November 2015.  (*Id.* at ¶¶ 22-24).  Between May and October 2015, plaintiff and defendants met with many individuals in Missouri to solicit the sale and purchase of the PAD Systems.  (ECF No. 77, Ex. A, ¶ 6).  Between August and November 2015, plaintiff insisted on seeing a demonstration of an operational PAD system.  (ECF No. 1, ¶ 25).  Brinkmann, Kersey, and Flickinger showed plaintiff a partially assembled piece of non-functioning equipment in a building located in Iowa, stating that it had previously been in operation but was being prepared for relocation.  (*Id.* at ¶ 25).  Defendants were never able to show plaintiff a working PAD system.  (*Id.* at ¶¶ 28-30).  On December 1, 2015, defendants demanded full payment of the remaining $600,000 due from plaintiff.  (*Id.* at ¶ 29).  In June 2016, defendant Brinkmann stated to plaintiff that the PAD Systems never functioned as promised.  (*Id.* at ¶ 30).

The license agreements contain a section captioned, 12.5 Governing Law, that provides, "[t]he sole jurisdiction and venue for actions related to the subject matter hereof shall be the State of Iowa and U.S. Federal courts located in Iowa.  Both parties consent to the jurisdiction of such courts . . . [.]"  (*Id.*, Ex. B. § 12.5).  On June 20, 2016, counsel for plaintiff submitted a demand letter to Brinkmann, Resource Converting, Sebright,

JWR, NewWay, Kersey, and Danley, demanding return of the $400,000 paid by plaintiff and threatening legal action if the sum was not repaid by June 30, 2016. (ECF No. 77, Ex. E). Resource Converting filed a breach of contract claim against Dunne on June 30, 2016 in Iowa state court. (*Id.* at Ex. F). On August 19, 2016, Dunne removed that case to the United States District Court for the Southern District of Iowa and also commenced the instant action in this district court.

## II. MOTION TO TRANSFER

Defendants Resource Converting, LLC, Tim Danley, and Rick Kersey move to transfer this action to the federal district court for the Southern District of Iowa pursuant to 28 U.S.C. § 1404 or, in the alternative, to transfer or dismiss the action for improper venue under Fed. R. Civ. P. 12(b)(3). (ECF No. 55). Defendants invoke the first-filed rule, the forum selection clause in the license agreements, and the equitable factors to be considered under § 1404.

### A. Legal Standard

District courts determining whether to grant a motion to transfer under § 1404(a) must consider three statutory factors: "1) the convenience of the parties; 2) the convenience of the witnesses; and 3) the interest of justice." *Dube v. Wyeth LLC*, 943 F. Supp.2d 1004, 1007 (E.D. Mo. 2013). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 695 (8th Cir. 1997).

### B. Discussion

The convenience of the parties, witnesses, and the interest of justice weigh in favor of keeping this case in this district, where plaintiff commenced it. While the license agreements at issue provide that "[t]he sole jurisdiction and venue for actions related to the subject matter hereof shall be [in Iowa]," (ECF No. 77, Ex. C. § 12.5), a

forum selection clause is but one factor a court considers in deciding whether or not to transfer a case—albeit a significant factor. *Terra Int'l, Inc.*, 119 F.3d at 696 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1955)). The parties' contractual selection of the state of Iowa as the venue for dispute litigation relates primarily to the statutory prong of the "convenience of the parties:"

> The other factors—the convenience of witnesses and the interest of justice—are third party or public interests that must be weighed by the district court; they cannot be automatically outweighed by the existence of a purely private agreement between the parties. Such an agreement does not obviate the need for an analysis of the factors set forth in § 1404(a) and does not necessarily preclude the granting of the motion to transfer.

*Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757–58 (3rd Cir. 1973).

The statutory factors weigh heavily in favor of keeping the case in this district. First, the convenience of the witnesses would be better served by keeping the case in this district, rather than transferring it to Iowa. Plaintiff has identified over twenty St. Louis-area residents who are witnesses to sales calls he allegedly made in this area with defendants between April and November 2015. (ECF No. 77, Ex. D). These non-party witnesses would likely be outside the 100-mile subpoena power of the federal district court in the Southern District of Iowa. *See* Fed. R. Civ. P. 45(b)(2). While these St. Louis-area witnesses might be deposed at a location convenient to them, the majority of plaintiff's witnesses would be presented by deposition rather than in live testimony. Defendants' non-party witnesses outside of the Eastern District of Missouri's 100-mile limit are described as likely to be employees of the defendants, who may be personally interested in the case outcome, and who may be more likely to appear in person to testify in this district. If the case were transferred to Iowa, multiple independent witnesses would be inconvenienced by appearing in person for trial, while it is not apparent that any independent witness would be inconvenienced were the case to stay in this district.

The interest of justice weighs heavily against transfer. While the agreements between plaintiff and Resource Converting contain a state-wide Iowa venue provision, the eight other remaining defendants have no such agreement. *See* 28 U.S.C. § 1391 (a).

4

Thus, venue for plaintiff's claims against these defendants would not necessarily be proper in the Southern District of Iowa, because not all of them are Iowa residents. Further, plaintiff argues that only one event related to the claim allegedly occurred there, the display of equipment to plaintiff, and it is unclear whether any of the remaining defendants would be subject to the court's personal jurisdiction there. *See* 28 U.S.C. § 1391(b). The interests of judicial economy and the avoidance of splitting claims weigh heavily toward denying transfer.

Finally, in considering the convenience of the parties, eight of the defendants did not agree to an Iowa-wide forum selection clause. Five defendants are residents of Michigan, Texas, or Wisconsin, for whom litigating in either Iowa or Missouri is likely equally inconvenient. The citizenship of the remaining defendants is not clear. (*See* ECF No. 96). For plaintiff, it would be more convenient to litigate in Missouri. Resource Converting has not described any substantial harm it might suffer by litigating this case in this court. Given the strong countervailing factors, defendants' reliance on the forum selection clause is insufficient to warrant transfer. *See Terra Int'l, Inc.,* 119 F.3d at 695.

After weighing the relevant factors, the court concludes that this case should remain in this district court.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to transfer (ECF No. 55) is denied. The court will proceed to issue its Case Management Order and to set a hearing on the pending motions to dismiss.

**IT IS FURTHER ORDERED** that a status conference and oral argument on the currently pending motion to dismiss is set for **January 13, 2017, at 10:00 am.**

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 6, 2016.