UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TOM DUNNE, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16 CV 1351 DDN |
| | ) |
| RESOURCE CONVERTING, LLC, | ) |
| TIM DANLEY, | ) |
| RICK KERSEY, | ) |
| SEBRIGHT PRODUCTS, INC., | ) |
| GARY BRINKMANN, | ) |
| NEWWAY GLOBAL ENERGY, LLC, | ) |
| DAVID WOLF, | ) |
| JERRY FLICKINGER, and | ) |
| JWR, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

This action is before the court on the motions of defendants Sebright Products, Inc. and Gary Brinkmann to dismiss Counts III, IV, V, and VII for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (ECF No. 35); defendant NewWay Global Energy, LLC, to dismiss Counts I, II, IV, V, VI and VIII for failure to state a claim (ECF No. 48); defendants David Wolf, Jerry Flickinger, and JWR, Inc., to dismiss Counts I, II, III, IV, V, and VI for failure to state a claim, or, in the alternative, for a more definite statement as to Counts I, II, III, V, and VI under Rule 12(e) (ECF No. 51); and defendants Resource Converting, LLC; Tim Danley; and Rick Kersey to dismiss Counts I and II under Rule 9(b) and Counts IV, V, VI, and VIII under Rule 12(b)(6) (ECF No. 57). Plaintiff has opposed all motions. (ECF Nos. 59, 67-69, 77). After hearing oral arguments from the parties on February 3, 2017, the court grants defendants' motions in part and otherwise denies them.

# I. BACKGROUND

Plaintiff Tom Dunne alleges the following facts in his judicial complaint. (ECF No. 1). In May 2015, defendant Gary Brinkmann contacted Dunne to sell him certain license agreements. (*Id.* at ¶ 16). These agreements would authorize and obligate plaintiff to acquire for resale "PAD systems" developed by defendants Resource Converting, LLC; Sebright Products, Inc.; and JWR, Inc., and sold by defendant NewWay Global Energy, LLC. (*Id.* at ¶¶ 16-17). The PAD systems are devices that would purportedly convert municipal solid waste into renewable fuels. (*Id.* at ¶ 16). The systems were advertised to plaintiff as "using proven and tested technology to create a homogenous dried fuel stock that can be converted into different forms of energy." (*Id.* at ¶ 19). Defendant Jerry Flickinger gave plaintiff a "budgetary quote for a single line processing system to take municipal solid waste and prepare it for conversion to fuel," stating a single system was "capable of processing 250 tons per day." (*Id.* at ¶ 20). Brinkmann and Flickinger allegedly assured plaintiff repeatedly of the PAD systems' proven function and the substantial value of the license agreements. (*Id.* at ¶ 21).

Plaintiff alleges that defendants Brinkmann, Flickinger, Danley, and Kersey solicited payment from him for the PAD systems and license agreements, and that they employed high-pressure sales pitches. (*Id.* at ¶ 22). As a result of defendants' assurances and representations, plaintiff entered into license agreements with Resource Converting in August 2015 and made an initial payment of $400,000 with an additional payment of $600,000 to be made in November 2015. (*Id.* at ¶¶ 22-24). Between May and October 2015, plaintiff and defendants met with many individuals in Missouri to solicit the sale and purchase of the PAD Systems. (ECF No. 77, Ex. A, ¶ 6). Between August and November 2015, plaintiff insisted on seeing a demonstration of an operational PAD system. (ECF No. 1, ¶ 25). Brinkmann, Kersey, and Flickinger showed plaintiff a partially assembled piece of non-functioning equipment in a building located in Iowa, stating that it had previously been in operation but was being prepared for relocation. (*Id.* at ¶ 26). Defendants were never able to show plaintiff a working PAD system. (*Id.* at ¶¶ 27-30). On December 1, 2015, defendants demanded full payment of the remaining

$600,000 due from plaintiff. (*Id.* at ¶ 29). In June 2016, defendant Brinkmann stated to plaintiff that the PAD Systems never existed as represented and never functioned as promised. (*Id.* at ¶ 30).

On June 20, 2016, counsel for plaintiff submitted a demand letter to Brinkmann, Resource Converting, Sebright, JWR, NewWay, Kersey, and Danley, demanding return of the $400,000 paid by plaintiff and threatening legal action if the sum was not repaid by June 30, 2016. (ECF No. 77, Ex. E). Resource Converting filed a breach of contract claim against Dunne on June 30, 2016 in Iowa state court. (*Id.* at Ex. F). On August 19, 2016, Dunne removed that case to the United States District Court for the Southern District of Iowa and also commenced the instant action in this district court. Defendants filed motions to transfer the case to Iowa and to dismiss the case. By a prior order, this court denied defendants' motions to transfer this suit to Iowa. It now considers defendants' motions to dismiss.

## II. MOTIONS TO DISMISS

After plaintiff filed his complaint, defendants Sebright and Brinkmann moved to dismiss Counts III, IV, V, and VII for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 35). Defendant NewWay also moved to dismiss Counts I, II, IV, V, VI and VIII for failure to state a claim. (ECF No. 48). Defendants Wolf, Flickinger, and JWR moved to dismiss Counts I, II, III, IV, V, and VI for failure to state a claim, or, in the alternative, for a more definite statement as to Counts I, II, III, V, and VI. (ECF No. 51). Defendants Resource Converting, Danley, and Kersey moved to dismiss Counts I and II under Rule 9(b) and Counts IV, V, VI, and VIII under Rule 12(b)(6) (ECF No. 57). Plaintiff has opposed all motions (ECF Nos. 59, 60, 67-69, 77), but voluntarily dismissed Count IV. (ECF No. 63).

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss part or all of a case for its failure to state a claim upon which relief can be granted. Fed. R.

3

Civ. Pro. 12(b)(6). A complaint "must include enough facts to state a claim to relief that is plausible on its face," providing more than just labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Such a complaint will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will state a claim for relief that rises above mere speculation. *Twombly*, 550 U.S. at 555.

In reviewing the pleadings under this standard, the court accepts all of the plaintiff's factual allegations as true and draws all inferences in the plaintiff's favor, but the court is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Retro Television Network, Inc. v. Luken Commc'ns, LLC,* 696 F.3d 766, 768-69 (8th Cir. 2012).

Finally, a court sitting in diversity will apply the choice-of-law rules of its forum state. *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015). In this case, the court has determined that the substantive law of Missouri provides the substantive rules of decision.[1]

**B.**  <u>**Counts I and II**</u>

In Count I of his complaint, plaintiff alleges fraudulent misrepresentation and concealment against all defendants. (ECF No. 1, ¶¶ 31-37). In Count II, he alleges fraudulent inducement and seeks rescission of the license agreements against all defendants. (*Id.* at ¶¶ 38-45). In both counts, plaintiff alleges that defendants either personally or through their agents "made false material representations regarding existence and/or function of the PAD Systems." (*Id.* at ¶¶ 32, 39). He alleges that all of the defendants had direct knowledge of the PAD Systems' non-functional nature and intended plaintiff to rely on the representations and sign the license agreements. (*Id.* at ¶¶ 32-33, 39-41).

---

[1] At oral argument, the parties agreed that if Missouri law did not apply, they would raise this in a motion to reconsider. (ECF No. 106).

4

Under Federal Rule of Civil Procedure 9(b), a fraud allegation demands a higher degree of notice than that required for other claims, and a party must state "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). In other words, the complaint must state the "who, what, where, when, and how" of the alleged fraud. *Id.*

NewWay argues that these counts fail to plead fraud with particularity against it, because plaintiff did not identify NewWay or its agents with any specificity in alleging fraudulent conduct. (ECF No. 48). NewWay further argues that plaintiff alleged no facts showing when and where he purportedly heard any particular statements and so has not adequately pleaded the elements of reliance and causation. *Id.* Defendants David Wolf, Jerry Flickinger, and JWR, Inc. similarly argue that these counts engage in "group pleading" and do not meet the Rule 9(b) specificity requirement and so must be dismissed. (ECF No. 51). In the alternative, these defendants request a more definite statement. *Id.* Resource Converting, Tim Danley, and Rick Kersey make the same Rule 9(b) specificity argument. (ECF No. 57).

The Court has carefully reviewed plaintiff's complaint and concludes that it does not adequately state the "who" or the "when":

> 16. On or about May 20, 2015, Brinkmann, individually and/or on behalf of Sebright, JWR, NewWay and Resource, solicited Plaintiff with the objective of selling Plaintiff certain products described herein, and ultimately with the purpose of selling Plaintiff certain license agreements ("License Agreements"), to service an area with a radius of one hundred miles (100) from St. Louis, authorizing and obligating Plaintiff to acquire for resale certain Resource PAD systems which purportedly converted municipal solid waste to biomass and ultimately to renewable fuels ("PAD Systems").
>
> 17. According to Brinkmann, NewWay is a company solely created to be the holding company that sells the PAD Systems which were developed by JWR, Sebright, and Resource. Brinkmann has identified the entities as "partner companies."
>
> 18. In furtherance of advertising said PAD Systems and License Agreements, Brinkmann, purportedly on behalf of Resource and as an

5

employee of Sebright, forwarded a brochure, attached hereto as Exhibit A, entitled "Waste Conversion Systems with Proven Capabilities" authored by JWR, Sebright, Resource and NewWay and the individual defendants named herein.

19. All named Defendants, through the brochure, advertised the PAD Systems by stating it was a "system using proven and tested technology to create a homogenous dried fuel stock that can be converted into different forms of energy..."

20. In furtherance of the advertisement of the PAD Systems and License Agreements, Flickinger, identified as an employee or agent of JWR and NewWay, provided what he identified as a "budgetary quote for a single line processing system to take municipal solid waste and prepare it for conversion to fuel" and stating the PAD Systems "mate[s] together existing PROVEN technologies into a comprehensive turnkey system capable of processing 250 tons per day..."

21. Defendants further represented that these capacities and capabilities would be achieved without using thermal systems to dry the feedstock materials. Resource, Seabright, JWR, NewWay, Brinkmann, and Flickinger continued to advertise the PAD Systems to Plaintiff with repeated assurances of the proven function of the PAD Systems and touting the substantial value of the License Agreements.

22. Further, Brinkmann, Flickinger, Danley and Kersey, individually and/or on behalf of JWR, Sebright, Resource and NewWay, solicited payment from Plaintiff for the PAD Systems and License Agreements, employing high pressure sales pitches. Among other things, Defendants represented that other parties were interested in securing the St. Louis area Licenses, that Plaintiff needed to execute the License Agreements and pay the $400,000, and that Plaintiff was at risk of losing the Licenses if he did not do so immediately.

23. As a result of the assurances and representations made by Defendants related to the PAD Systems and License Agreements, Plaintiff entered into the License Agreements with Resource and submitted an initial payment of $400,000.00. Copies of the License Agreements are attached hereto as Exhibit B.

(ECF No. 1, ¶¶ 16-23).

In Counts I and II, plaintiff alleges that "all" defendants had direct knowledge of the non-functional nature of the PAD systems and "all" defendants made fraudulent

representations to plaintiff to induce him to pay $400,000 worth of licensing agreements. (ECF No. 1 at ¶¶ 32-33, 39-41). The facts in paragraphs 1 to 30 of the complaint offer little additional guidance as to which specific defendant made which representation, with general accusations that "defendants" performed certain acts. (*Id.* at ¶¶ 19, 21-23). The particularity requirement of Rule 9(b) serves several purposes:

> First, it deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel *in terrorem* settlements. Second, it protects against damage to professional reputations resulting from allegations of moral turpitude. Third, it ensures that a defendant is given sufficient notice of the allegations against him to permit the preparation of an effective defense.

*Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015) (citations omitted). While there are multiple individuals and corporations involved in this dispute, plaintiff must nevertheless inform each defendant of the nature of his or its alleged participation in the fraud.

At oral argument, counsel for plaintiff argued that every single defendant was engaged in the acts alleged, and so the pleadings were appropriately specific. (ECF No. 106). However, the Eighth Circuit has held that Rule 9(b) requires more than such conclusory and generalized allegations. *Id.* It has affirmed the dismissal of pleadings as deficient under Rule 9(b) when they did not specify which individual performed which fraudulent act, *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 889 (8th Cir. 2003), and when they "attributed fraudulent representations and conduct to multiple defendants generally, in a group pleading fashion." *Streambend Properties II, LLC v. Ivy Tower Minneapolis*, *LLC*, 781 F.3d at 1012–13. In *Streambend*, for example, the pleadings alleged various wrongdoings by "defendants" or "developers," without specifying the individual actor. *Id.* (with the pleadings discussing, *e.g.*, "developers' closing on and conveyance of units to purchasers without providing marketable title to the units," "defendants leading plaintiffs to believe that their earnest monies were safely maintained in the trust accounts when they were not," and defendants taking action "directly or indirectly through any series or chain of subsidiaries or other entities." *Id.*).

As plaintiff is alleging that the PAD System is non-functional, then the fraudulent misrepresentations would be representations as to the System's functionality. That "every" statement made by each defendant was fraudulent "lacks sufficient indicia of reliability." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 557 (8th Cir. 2006) (citations omitted). Even if plaintiff is alleging that there was a fraudulent conspiracy between all defendants, and all defendants made fraudulent misrepresentations, he must nevertheless provide enough representative examples of the alleged fraudulent conduct, "specifying the time, place, and content of their acts and the identity of the actors," for each defendant to be able to specifically respond. *Id.* "Summary" allegations are insufficient under Rule 9. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin. Corp.*, 690 F.3d 951, 956 (8th Cir. 2012) (citations omitted).

Moreover, necessary to a claim of fraud are reliance and causation. Accordingly, the heightened pleading standard requires the "when" in order to determine the timeline of events: which events occurred *before* the alleged reliance and which events occurred *after*—as the latter could not possibly have induced the reliance. It appears from Exhibit 2 that the license agreements were signed on August 21, 2015. (ECF No. 1 at Ex. 2). While plaintiff alleges that on or about May 20, 2015, Brinkmann[2] approached him with the objective of making the license agreements (ECF No. 1, ¶ 16), the other acts regarding representations as to the System's functionality are undated. Plaintiff has failed to include specific dates in the facts related to this claim. Even when looking to the exhibits supporting the complaint, it is impossible to determine which of the alleged events occurred before plaintiff signed the license agreements and which occurred after, or when plaintiff received any of the exhibited materials.[3] Moreover, the dated allegation concerning Brinkmann fails to specify the content of the alleged misrepresentation. *Id.*

---

[2] The complaint alleges that Brinkmann performed this act "individually and/or on behalf of Sebright, JWR, NewWay and Resource." (ECF No. 1, ¶ 16).

[3] For example, there is a date on the budgetary estimate of 8-4-2015, but it is not alleged that plaintiff received the estimate on this date, let alone when he received the brochure, a related document discussed extensively at oral argument. (ECF No. 1, Ex. 1).

The Eighth Circuit has affirmed the dismissal of similarly vague complaints under Rule 9(b). In *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, the complaint alleged false medical claims but failed to identify:

> (1) the particular CRNAs who allegedly performed patient care and administered anesthesia services unsupervised, (2) when [defendant] falsely claimed to have supervised or directed CRNAs, (3) who was involved in the fraudulent billing aspect of the conspiracy, (4) what services were provided and to which patients the services were provided, (5) what the content was of the fraudulent claims, (6) what supplies or prescriptions were fraudulently billed and to which patients the supplies or prescriptions were provided, (7) what dates the defendants allegedly submitted the false claims to the government, (8) what monies were fraudulently obtained as a result of any transaction, or (9) how [plaintiff], an anesthesiologist, learned of the alleged fraudulent claims and their submission for payment.

441 F.3d 552, 556 (8th Cir. 2006). Instead, the Eighth Circuit found pleadings to meet the Rule 9(b) standard when they "set[] forth times and places of numerous meetings, marketing seminars, and private conversations in which misrepresentations are claimed to have been made" and "name[d] the parties to those communications and describe[d] the content of the claimed false statements." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001).

At present, plaintiff's complaint fails to meet the heightened pleading standard of Rule 9(b) as interpreted by the Eighth Circuit. Like *Joshi* and *Streambend*, plaintiff's complaint fails to allege fraud with the required level of specificity: it does not identify who made which misrepresentation(s) to plaintiff, when these were made, how these were made, or who accepted which benefit. Defendants would have this claim dismissed under *Streambend*, but the plaintiff in that case had made multiple amendments to its complaint and still failed to meet the heightened pleading standard for fraud. *Id.* at 1014-15. Plaintiff has yet to amend his complaint. Accordingly, while defendants' motions to dismiss these counts are sustained, the counts are dismissed without prejudice, and plaintiff has leave to amend these counts within thirty days of this date. The alternative motion for a more definite statement under Fed. R. Civ. P. 12(e) (ECF No. 51) is denied as moot.

## C. Count III

In Count III, plaintiff claims unjust enrichment against all defendants. Plaintiff asserts that he conferred a benefit onto "all" defendants and all defendants accepted and retained the benefit, in the form of the $400,000 payment, "under inequitable and/or unjust circumstances in that the payment was a result of fraudulent material misrepresentations." (ECF No. 1 at ¶¶ 47-49). Defendants Sebright and Brinkmann argue that the facts in the complaint only allege plaintiff conferred a benefit on a single defendant: Resource, with whom he made the License Agreements and to whom he submitted payment. (ECF No. 35). Defendants Wolf, Flickinger, and JWR argue that this count engages in "group pleading" and does not meet the Rule 9(b) specificity requirement so must be dismissed. In the alternative, these defendants request a more definite statement. (ECF No. 51).

While Rule 9(b) clearly applies to common law claims of fraud, it also applies to claims that require proof of fraud as a prerequisite to establishing liability. *Streambend*, 781 F.3d at 1010 ("Claims 'grounded in fraud' must meet this heightened pleading requirement." (citations omitted)).

A claim for unjust enrichment has three elements: (1) a benefit conferred by a plaintiff on a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under circumstances in which it would be unjust to allow the defendant to retain the benefit. *Executive Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678, 697 (Mo. App. 2009); *Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo. App. 2006). Plaintiff's unjust enrichment claim is grounded in fraud. He alleges that defendants retained the benefit "under inequitable and/or unjust circumstances *in that the payment was a result of fraudulent material misrepresentations* regarding the consideration given for said payment and a result of an elaborate scam based on non-existing and/or non-functioning equipment." (ECF No. 1, ¶ 48) (emphasis added).

Because plaintiff's unjust enrichment claim is grounded in an allegation of fraud, it must also satisfy the Rule 9(b) heightened pleading standard. *See, e.g., Streambend*

*Properties*, 781 F.3d at 1010-12; *Nestle Purina PetCare Co. v. Blue Buffalo Co.,* No. 4:14 CV 859 RWS, 2015 WL 1782661, at *7-*8 (E.D. Mo. Apr. 20, 2015). For the reasons discussed above, regarding Counts I and II, Count III also fails to meet that standard. Count III is dismissed without prejudice to being amended within thirty days of this date.

### D. Count V

Plaintiff claims in Count V a constructive trust against all defendants, alleging that he conferred a benefit on defendants in the $400,000 payment, which they accepted and retained under inequitable circumstances. He requests the court impose a constructive trust on the PAD Systems, to the extent they exist, so that plaintiff may collect judgment against the PAD Systems. (ECF No. 1 at ¶¶ 58-65).

A constructive trust is a remedy applied in cases of actual or constructive fraud or unjust enrichment. *John R. Boyce Family Trust v. Snyder*, 128 S.W.3d 630, 638 (Mo. Ct. App. 2004) (citations omitted). It may be imposed where the plaintiff has been fraudulently deprived of "some title, right, equity, interest, expectancy, or benefit in the property which, otherwise and but for such fraudulent or wrongful act or conduct, he would have had." *Id.* (citations omitted). It is only imposed on the specific property or the proceeds of the sale of the property to which the plaintiff has a right. *Id.* Plaintiff has not alleged that he has any right, title, or interest in the PAD Systems themselves. The license agreements and the facts of the complaint only allege that plaintiff has a limited right to resell the Pad Systems. Accordingly, even construing the facts in the complaint in plaintiff's favor, he has alleged no right in the PAD Systems or any other *res* against which the court could impose a constructive trust. When a plaintiff is entitled to nothing more than a money judgment, he cannot make a valid claim for a constructive trust. *Id.* at 639. Count V therefore fails to state a claim and will be dismissed without prejudice.

**E.     Count VI**

In Count VI, plaintiff claims civil conspiracy against all defendants. (ECF No. 1 at ¶¶ 66-72). A claim for civil conspiracy must establish that: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged." *Creative Walking, Inc. v. Am. States Ins. Co.*, 25 S.W.3d 682, 688 (Mo. Ct. App. 2000) (citations omitted).

Defendant NewWay argues that Count VI merely restates the elements of civil conspiracy without alleging any factual support for the "meeting of the minds" element or the "act in furtherance of the alleged conspiracy" element. (ECF No. 48). Additionally, defendants Wolf, Flickinger, and JWR argue that this claim engages in "group pleading," and they request dismissal or a more definite statement. (ECF No. 51).

Plaintiff's complaint presently fails to adequately allege the first and fourth elements of a civil conspiracy claim. In terms of the fourth element, if the underlying act giving rise to a civil conspiracy claim fails to state a cause of action, then the conspiracy claim must fail as well. *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. 1999) (citations omitted). Plaintiff alleges that defendants conspired to obtain payment from plaintiff through fraudulent material misrepresentations. (ECF No. 1 at ¶¶ 67-68). His allegations of fraudulent misrepresentations related to the underlying act required for civil conspiracy are not stated with the required specificity. However, while his fraud-based claims presently fail to reach the heightened pleading standard, plaintiff will be granted leave to amend these counts.

With respect to the first element, Missouri recognizes the general rule that an agent cannot conspire with his principal. *Creative Walking*, 25 S.W.3d at 688. "Two entities which are not legally distinct cannot conspire with one another." *Id.* (citations omitted). Plaintiff alleges that specific individual defendants are employees or agents of specific corporate defendants. (*See, e.g.,* ECF No. 1 at ¶¶ 4, 6, 9, 11, 16, 20). To the extent that plaintiff alleges elsewhere, however, that the corporate defendants are not legally distinct, this is a legal conclusion. (ECF No. 1 at ¶ 73-79). Plaintiff also argues

12

individual defendants have cross-represented each company. *Id.* If the court is to accept plaintiff's complaint as true, this allegation adversely affects his civil conspiracy claim. In *Creative Walking*, the plaintiff alleged that multiple agents and employees of a corporation participated in a conspiracy to defraud insureds on behalf of their employer. *Creative Walking*, 25 S.W.3d at 684-85. The trial court dismissed the case, and the Missouri Court of Appeals affirmed, reasoning that the identity between the agents and the principal made conspiracy "a legal impossibility." *Id.* at 688.

It is unclear from the face of plaintiff's complaint which defendant is alleged to have conspired with whom. This count is dismissed without prejudice to plaintiff amending his complaint within thirty days of this date.

**F.    Count VII**

Plaintiff seeks in Count VII to pierce the corporate veil as to all defendants. He alleges, as mentioned above, that the corporate defendants are instruments of each other and the individual defendants used the companies as instruments of themselves "in that they all function as one cohesive unit." (ECF No. 1 at ¶ 74). He alleges that the companies are a legal sham designed to protect the individual defendants from liability. (*Id.* at ¶ 75).

Defendants Sebright and Brinkmann argue that "piercing the corporate veil under an alter ego theory is best thought of as a remedy to enforce a substantive right, and not an independent cause of action." *Tamko Roofing Prod's, Inc. v. Smith Eng. Co.*, 450 F.3d 822, 826 n. 2 (8th Cir. 2006) (citations omitted). However, the *Tamko Roofing Products* case applied California law. *Id.* at 826. Under Missouri law, piercing the corporate veil on the alter ego theory may be pleaded as a "separate and distinct cause of action." *Irwin v. Bertelsmeyer*, 730 S.W.2d 302, 304 (Mo. Ct. App. 1987). *See also Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.*, 885 S.W.2d 771, 774-75 (Mo. Ct. App. 1994) (denying a motion to dismiss an alter ego theory of piercing the corporate veil for failure to state a claim).

To pierce the corporate veil under Missouri law, a plaintiff must prove three elements: first, the defendant must have control of the corporation, "not mere majority or complete stock control, but complete domination, not only of finances, but, of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own;" second, the defendant must have used this control to commit a fraud or wrong; and, third, the defendant's misuse of the corporation must have proximately caused the alleged injury or loss. *Doe 1631 v. Quest Diagnostics, Inc.,* 395 S.W.3d 8, 18 (Mo. banc. 2013).

Under Missouri law, "mere identity of shareholders, directors, or officers between two corporations is insufficient to find an identity of interests between the two entities to pierce the corporate veil." *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 376 (Mo. Ct. App. 2014) (citations omitted). Even in terms of parent-subsidiary corporations, legal separation should be "ignored with caution and only when the circumstances clearly justify it." *Doe 1631*, 395 S.W.3d at 18 (citations omitted).

The circumstances in which corporate veils have been pierced in Missouri are quite unlike the facts alleged in plaintiff's complaint. In *Irwin v. Bertelsmeyer,* the Missouri Court of Appeals reversed the trial court's dismissal of an action seeking to pierce the corporate veil when the plaintiff alleged that the defendants were the corporation's sole shareholders, officers, and directors and used the corporation to avoid their judgment debt to the plaintiff. 730 S.W.2d 302, 304 (Mo. Ct. App. 1987). In *R. Webbe Corp.*, the plaintiff pled that defendants were the corporations' sole officers, directors and shareholders, made all corporate decisions, controlled all corporate activities, and held allegedly corporate property in their individual names to avoid plaintiff collecting on judgments against them individually. 885 S.W.2d at 774. This was also sufficient to withstand a motion to dismiss. *Id.* at 775.

Plaintiff has pled summarily that the companies' finances and operations are interwoven but has not pled facts that plausibly indicate that any of the individual defendants or corporate defendants have complete control over any of the corporate defendants to meet the first required element. Accordingly, plaintiff fails to state a claim

upon which relief can be granted, and Count VII is dismissed without prejudice, with leave to amend within thirty days of this date. To the extent that counsel for plaintiff asserted that piercing the corporate veil would be pled as a remedy instead of a claim (ECF No. 106), plaintiff is granted leave to do so within thirty days of this date.

### G. Count VIII

In his last count, plaintiff claims negligent misrepresentation against all defendants. (ECF No. 1 at ¶¶ 80-86). Defendant NewWay argues that this claim is barred by the economic loss doctrine, which "prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature." *Captiva Lake Investments, LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 628 (Mo. Ct. App. 2014). Under Missouri law, "recovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence." *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010) (citations omitted).

NewWay argues that plaintiff's claim arises solely from the license agreements and so may not be brought in tort. (ECF No. 49). Defendants Resource Converting, Danley, and Kersey also argue that damages for economic loss based on a contract may not be recovered in a negligence claim, and, here, plaintiff has not alleged personal injury or damage to other property, only pure economic loss. (ECF No. 58).

The court agrees. Plaintiff's claim for negligent misrepresentation arises out of a contract. (ECF No. 1 at ¶¶ 80-86). Plaintiff is alleging that he was damaged to the extent of the $400,000 payment he made under the licensing contracts for the allegedly misrepresented PAD systems. *Id.* He is essentially alleging that he, as the purchaser of certain rights, failed to receive the benefit of his bargain. This is traditionally the concern of contract law and is barred by the doctrine of economic loss. Accordingly, this claim is dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## III. ORDER

For the above reasons,

**IT IS HEREBY ORDERED** that the motions of defendants to dismiss (ECF Nos. 35, 48, 51, 57) are **granted**, in that Counts I, II, III, V, VI, VII, and VIII of plaintiff's complaint are dismissed without prejudice, with leave to amend within thirty days of this date.

**IT IS FURTHER ORDERED** that defendants' alternative motion for a more definite statement (ECF No. 51) is **denied** as moot.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on February 13, 2017.