# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TOM DUNNE, JR., | ) |
| Plaintiff, | ) |
| v. | ) No. 4:16 CV 1351 DDN |
| RESOURCE CONVERTING, LLC, TIM DANLEY, RICK KERSEY, SEBRIGHT PRODUCTS, INC., GARY BRINKMANN, NEWWAY GLOBAL ENERGY, LLC, DAVID WOLF, JERRY FLICKINGER, and JWR, INC., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER COMPELLING DOCUMENT PRODUCTION AND ENFORCING PRIOR ORDER

This action is before the Court on the renewed motion of plaintiff Tom Dunne, Jr. to enforce this Court's November 6, 2017, Order Granting Motion to Compel (Doc. 220) and to compel production of documents from defendants Resource Converting, LLC, Tim Danley, and Rick Kersey ("the RCI defendants"). (Doc. 310). The RCI defendants objected to this motion, and plaintiff replied and has moved twice to supplement the motion (Docs. 258, 261, 273, 276). The Court held a hearing on this matter on April 10, 2018. The Court stayed resolution of the matter pending the related jury trial in the United States District Court for the Southern District of Iowa, and denied the initial motion (Doc. 254) without prejudice to being refiled following the conclusion of that trial. (Doc. 292). The trial has now concluded and, in anticipation of the parties' status conference with the Court on October 29, 2018, plaintiff refiled his motion to enforce. For the reasons discussed below, the motion is granted in part.

## BACKGROUND

On November 6, 2017, this Court issued an order granting plaintiff's motion to compel the production of discovery documents post-dating August 21, 2015. Plaintiff alleges that the RCI defendants' counsel improperly advised the RCI defendants not to search for such documents. (Docs. 203, 220). Plaintiff subsequently moved the Court to set a compliance deadline requiring the RCI defendants to respond by December 6, 2017, which the Court granted. (Docs. 224, 228). The RCI defendants then produced 24,196 pages of documents on December 6, 2017. (Doc. 254 at 1).

Plaintiff argues that the RCI defendants have not complied with this Court's order, by: (1) failing to adequately search for and produce key documents, or in the alternative by deliberately removing them; (2) deliberately producing documents of an inferior quality, such that some of them are effectively illegible; (3) artificially inflating the number of documents produced and the cost to plaintiff incurred in reviewing them by producing the exact same documents multiple times; and (4) "providing vague supplemental responses to [plaintiff's] specific requests that simply tell [plaintiff] to go fish in 24,000 pages of documents." (Doc. 254 at 2). In response, the RCI defendants describe plaintiff's motion as a "scorched-earth discovery battle" with "patently false" allegations. (Doc. 258 at 1-3).

Plaintiff further argues that the RCI defendants have withheld insurance agreements applicable to this litigation, correspondence with their insurers, and materials related to changes to its website during and shortly after its interactions with plaintiff. (Doc. 311).

## ANALYSIS

The Court has carefully considered plaintiff's motion, the RCI defendants' response, plaintiff's reply, their respective exhibits, and the representations made by counsel at the motion hearing of April 20, 2018, and in the court proceeding on October

29, 2018. It has further considered the prior history of discovery proceedings in this case, including the hearing conducted on November 3, 2017.

      *A. Absence of key documents*

Plaintiff asserts that, the considerable volume of the December 6 production notwithstanding, key responsive documents from the RCI defendants are still absent. (Doc. 254 at 12-15). Plaintiff has provided certain e-mails his counsel received from a non-party, Recycled Energy Corporation ("REC"), which he claims contain communications between REC and the RCI defendants that support the proposition that the RCI defendants' PAD waste-disposal system was not functioning as originally advertised. (*Id.* at 13-14; *see also id.*, Exs. 10-11). These e-mails were not included in the December 6 production. From this, plaintiff infers that there may yet be additional responsive documents in the RCI defendants' possession. (*Id.*)

Plaintiff also offers the depositions of each of the RCI defendants and that of their employee, Mark Reth, to support the claim that key testing data regarding the actual capabilities of the PAD waste-disposal system has been deliberately omitted, and that a laptop was missing. (Docs. 261-5 at 233-36, 261-6 at 186-88, 261-7 at 240-241). Each of the deposed defendants and Mr. Reth asserted under oath that Resource Converting maintained records of testing data on the PAD system's capabilities. (*Id.*) Mr. Reth claimed they were held by Mr. Kersey; Mr. Kersey claimed they were held by Mr. Reth; Mr. Danley claimed they were held either by Mr. Reth or Mr. Kersey. (*Id.*)

Plaintiff further claims that the RCI defendants have failed to turn over insurance agreements related to coverage of any judgment entered in this case, which are required to be disclosed without request but which have not been disclosed even with formal requests. (Doc. 311 at 9).

In response, the RCI defendants maintain that they "made every reasonable attempt to comply with the Court order." (Doc. 258 at 6). They assert that any responsive document not produced in the December 6 production was simply missed in the course of their search. (*Id.* at 5). They also dispute the nature of the REC/RCI emails

and the extent to which they reasonably support an inference that the RCI defendants' PAD system was not performing as originally advertised. (*Id.*)

Plaintiff requests that the Court appoint an independent forensic expert to preside over the technical discovery requests and responses, as authorized by Federal Rule of Evidence 706. The parties have had several opportunities for discovery in several venues and from parties and nonparties alike, and, considering the proportionality of the Federal Rules of Civil Procedure to the needs of the case, the Court is not convinced that an independent forensic expert is warranted at this time. *See* Fed. R. Civ. P. 26(b). The RCI defendants are still obligated to supplement their production with any documents that are responsive to plaintiff's requests, *id.* at (e), and they must disclose any relevant insurance agreements. *Id.* at (a)(1)(A)(IV).

### *B. Inferior document quality*

The bates-stamped version of the RCI defendants' document production was in black and white. These black-and-white files were heavily pixelated to an extent that, to the Court's perception, made some files difficult to read and others effectively illegible. (*Id.* at 9-10). Because some files had already been produced by the RCI defendants in earlier responses, side-by-side comparison of such twice-produced files shows that the version produced on December 6 is of substantially inferior quality to that produced by the same defendants previously. (*Id.*).

The RCI defendants claim that all documents were produced "in their full and complete native format in the same exact manner in which they are maintained[.]" (Doc. 258 at 6). However, the sworn affidavit of Kristine Goettsch, plaintiff's Litigation Support Project Manager, asserts that the document metadata shows the black-and-white, pixelated documents are actually created from native files, such as those produced by Microsoft Word, which are still in the RCI defendants' possession. (Doc. 254 at 10; *see also id.*, Ex. 18 at 2-3). The RCI defendants further claim that they did provide the original native documents in color, high-quality form. They assert that they did so in the form of .mbox files. (Doc. 258 at 3).

These .mbox files were designated "takeout-20171203T214322Z-001.zip" and "takeout-20171204T160514Z-001.zip," respectively. They contained no readily discernable metadata identifying them as containing color copies of the entire production, nor were they identified to plaintiff's counsel as important, or even as present, until after plaintiff filed the instant motion. (Doc. 258, Ex. 7). Furthermore, the .mbox file-type is not compatible with commonly-used document-review programs. (*Id.*, Exs. 6, 7). The RCI defendants acknowledged that these files could not be opened by commonly-used programs. (*Id.*, Ex. 6 at 4). Plaintiff would have to purchase "special licensed software or [hire] an outside vendor to try to extract this information." (*Id.*, Ex. 6 at 5).

At plaintiff's expense, counsel for plaintiff did in fact do exactly that, so as to test the RCI defendants' claim as to the .zip files' contents. (Doc. 261 at 8). The resulting exhibit demonstrated that the specific file examined contained a higher-definition, color copy of a file that the RCI defendants had produced as a heavily-pixelated, black-and-white image. (*Cf. id.*, Ex. 2 with Ex. 3). The RCI defendants offer no explanation as to why they did not simply provide plaintiff with the higher-definition, color copies that the .mbox files demonstrate were in their possession all along. The native files in the .mbox folders, moreover, are not bates-stamped, and so they do not correspond to the files for which plaintiff's counsel has already spent hours reviewing and notating. For plaintiff to manually re-process each file would cost plaintiff between $24,416.25 and $48,832.50 in additional labor. (*Id.* at 8; *see also id.*, Ex. 10 at 3).

The Court notes that unless the parties otherwise agree, "a responding party is [not] free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." 2006 Advisory Committee Notes to Federal Rule of Civil Procedure 34(b). Although the native files within the .mbox folders were produced in the form in which they were ordinarily maintained, the .mbox folder in which they were delivered was not a reasonably usable form because it was not reasonably accessible to plaintiff. Blurry or illegible documents

are not an acceptable discovery response, and the documents must be in a usable format for the benefit of the parties and the fact-finder in this case.

The RCI defendants' refusal to diligently obtain responsive documents has forced plaintiff to file repeated motions to compel discovery and has needlessly increased the costs and duration of this case. *See id.* Having already sanctioned the RCI defendants once, the Court issues the following to discourage any further resistance to discovery orders.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to compel and to enforce (Doc. 310) **is GRANTED in that d**efendants Tim Danley, Rick Kersey, and Resource Converting, LLC, must resubmit to plaintiff the subject low-quality documents in a non-blurry, legible form digitally accessible to plaintiff, and with the same bates-stamp numbers as the original production, not later than **December 1, 2018**. Said defendants must also produce any relevant insurance agreements, and must supplement all either required or otherwise ordered disclosures and production with responsive documents that have not yet been produced.

**IT IS FURTHER ORDERED**, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), that defendants Tim Danley, Rick Kersey, and Resource Converting, LLC, pay to plaintiff those attorneys' fees and expenses incurred in preparing, filing, and prosecuting the second motion to compel (Doc. 310). Plaintiff may file **within 30 days** an affidavit and supporting documentation in support of a claim for the payment by the RCI defendants of the fees and costs resulting from the proceedings on this motion.

        /s/   David D. Noce        
**UNITED STATES MAGISTRATE JUDGE**

Signed on October 30, 2018.