UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TOM DUNNE, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16 CV 1351 DDN |
| | ) |
| RESOURCE CONVERTING, LLC, | ) |
| TIM DANLEY, | ) |
| RICK KERSEY, | ) |
| SEBRIGHT PRODUCTS, INC., | ) |
| GARY BRINKMANN, | ) |
| NEWWAY GLOBAL ENERGY, LLC, | ) |
| DAVID WOLF, | ) |
| JERRY FLICKINGER, and | ) |
| JWR, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS**

This action is before the court on the motions of defendants Resource Converting, LLC; Tim Danley; and Rick Kersey to dismiss plaintiff's second amended complaint (Doc. 329); all defendants to strike plaintiff's prayer for relief for attorney fees (Doc. 337); defendant David Wolf to dismiss him from Counts 1 and 4 (Doc. 338); defendants Sebright Products, Inc.; Gary Brinkmann; NewWay Global Energy, LLC; David Wolf, Jerry Flickinger; and JWR, Inc., to dismiss Counts 1, 5, 6, 7, and 8 for failure to state a claim (Doc. 340); and defendant NewWay to dismiss Count 4. (Doc. 342). Plaintiff has opposed all motions. The Court heard oral arguments from the parties on February 1, 2019.

The Counts remaining in this action are Count 1 for fraudulent misrepresentation/concealment against all defendants, Count 2 for fraudulent inducement/rescission against Resource, Count 4 for unjust enrichment against

defendants Resource and NewWay, and Counts 5-8 for civil conspiracy against various groupings of all defendants. The Court will not repeat the background facts it has set forth in numerous memoranda and orders, but will address each motion to dismiss or strike in turn.

## II.     MOTIONS TO DISMISS

### A.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss part or all of a case for the complaint's failure to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6). A complaint "must include enough facts to state a claim to relief that is plausible on its face," providing more than just labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Such a complaint will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will state a claim for relief that rises above mere speculation. *Twombly*, 550 U.S. at 555.

In reviewing the pleadings under this standard, the court accepts all of the plaintiff's factual allegations as true and draws all inferences in the plaintiff's favor, but the court is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Retro Television Network, Inc. v. Luken Commc'ns, LLC,* 696 F.3d 766, 768-69 (8th Cir. 2012).

### B.     Motions to Dismiss

Defendants Resource Converting, LLC; Tim Danley; and Rick Kersey have moved to dismiss the entire action based on the law of the case doctrine, res judicata, the rule against claim-splitting, and the first-filed rule. (Docs. 329, 330).[1]     For     the

---

[1] Their motion also argues for dismissal specifically of Counts 3, 4, and 9-12. These Counts have already been dismissed and the Court did not permit plaintiff to amend the complaint to re-add them. (Docs. 315, 320). This memorandum addresses only the arguments as to remaining counts.

reasons discussed in its opinion denying similar motions over two years ago, the Court will not address the claim-splitting or first-filed rule arguments. (Doc. 97). However, the Court finds that res judicata applies to bar some of plaintiff's claims.

The second amended complaint (Doc. 319) alleges the following. In August 2015, based on representations and negotiations between the parties to this lawsuit, plaintiff Dunne entered into a licensing agreement with defendant Resource Converting for a "PAD" system that would convert municipal solid waste into renewable fuel. (Doc. 319). Dunne made an initial payment of $400,000, promising to make an additional payment of $600,000 in November 2015. However, Dunne became convinced that the PAD system did not work as advertised, or at all, so he withheld the second payment. On December 1, 2015, Resource Converting demanded full payment from plaintiff. In June 2016, counsel for Dunne submitted a demand letter to defendants, asserting that the contract had been fraudulently procured and demanding return of the partial contractual sum already paid. Less than two weeks after sending that letter, defendant Resource Converting filed suit against Dunne in Iowa state court for breach of contract. On August 19, 2016, Dunne removed that case to the United States District Court for the Southern District of Iowa and also commenced the instant case in this District Court. *See Resource Converting, LLC, v. Dunne*, 4:16 CV 470 JAJ-SBJ (S.D. Iowa) (Doc. 1).

In each action, the defendant(s) filed motions to transfer to the other court, where they had filed their cases as plaintiff. This Court denied defendants' motion to transfer this case to Iowa on December 6, 2019. One week later, on December 13, 2016, the Southern District of Iowa denied Dunne's corresponding motion to transfer to *this* Court. Accordingly, the cases proceeded simultaneously.

In Iowa, Dunne filed a counterclaim for fraudulent misrepresentation. A jury trial was held in May 2018, and the jury returned a verdict for Dunne and against Resource Converting, awarding Dunne no compensatory damages but $200,000 in punitive damages. (*Id.,* Doc. 206) (May 29, 2018). The parties have filed post-trial briefs that are currently pending before that court.

3

Res judicata, or claim preclusion, bars further claims by parties based on the same cause of action where there has already been a final determination on the merits. *See In re Kapp,* 611 F.2d 703, 707 (8th Cir. 1979) (citing *Montana v. United States,* 440 U.S. 147, 153 (1979)). "'Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Kapp,* 611 F.2d at 707 (quoting *Chicot County Dist. v. Bank*, 308 U.S. 371, 378 (1940)).

However, claim preclusion will only bar a subsequent suit when: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018). Furthermore, the party against whom res judicata is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect. *In re Anderberg–Lund Printing Co.,* 109 F.3d 1343, 1346 (8th Cir. 1997).

Defendants assert that claim preclusion applies to bar plaintiff's claims in this case. The Court addresses each of the elements in turn. First, a final judgment has been reached in the federal district court in Iowa. The Eighth Circuit has held that "the pendency of an appeal does not diminish the *res judicata* effect of a judgment rendered by a federal court." *In re Ewing*, 852 F.2d 1057, 1060 (8th Cir. 1988). While the Eighth Circuit has not addressed the *res judicata* impact of post-trial proceedings in a district court on a judgment, such proceedings do not lessen the finality of a judgment for res judicata purposes. A district court judgment is "final" for purposes of res judicata even if a Rule 59(e) motion or an appeal from that judgment is pending. *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988), *cert. denied*, 488 U.S. 982 (1988); *cf.*, *Hubbell v. United States*, 171 U.S. 203, 209-10 (1898) ("Indeed, it may well be doubted whether the pendency of a motion for a new trial would interfere in any way with the operation of the judgment as an estoppel."); Restatement (Second) of Judgments, § 13 comment f (1982). This is because the policies served by the finality requirement are different for purposes of appeal than for purposes of res judicata:

> In the case of appellate jurisdiction, the requirement [of finality] ensures that appellate courts do not waste time reviewing cases whose outcomes might change. By setting the point of "finality" after the disposition of the Rule 59 motion, we save trial courts and appellate courts from duplicating each other's work. In the case of preclusion, the finality requirement ensures that parties have a full opportunity to litigate a claim before they are barred from asserting it again. The claim has already been fully litigated by the time a Rule 59 motion is pending; the considerations of economy underlying preclusion militate in favor of setting the point of "finality" sooner rather than later.

*Tripati*, 857 F.2d at 1367 n.1; *see also* § 4432 Finality—Traditional Requirement, 18A Fed. Prac. & Proc. Juris. § 4432 (3d ed.). Accordingly, when the Iowa federal district court issued its judgment order disposing of all of the issues against all of the parties in the case, the suit became final for purposes of res judicata.

Second, both suits involve the same cause of action. To determine whether the "same cause of action" is involved for res judicata purposes, the Court of Appeals for the Eighth Circuit has adopted the transactional approach of the Restatement (Second) of Judgments. *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). Under this approach, "a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim." *Id.* In determining whether a later claim arises out of the same nucleus of operative facts as a prior claim,

> [t]he present trend is to see [a] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from these theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

*Id.* at 743 (quoting Restatement (Second) of Judgments § 24, cmt. a at 197 (1980)). Claim preclusion can be applied even if the same facts are not involved in both cases. *Lane,* 899 F.2d at 743. The Iowa case and this case involve the same nucleus of operative facts: the communications between the parties leading up to their licensing agreement and the ensuing contractual dispute. This case does include several claims that

were not made in Iowa: fraudulent inducement/rescission against Resource, unjust enrichment against defendants Resource Converting and NewWay, and civil conspiracy against various groupings of all defendants.

This relates to the third element: whether both suits involve the same parties or their privies. "The term 'privity' once referred to specific substantive legal relationships, but it has come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground. . . . [It] is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.'" *Elbert*, 903 F.3d at 782 (citations and internal quotations omitted). In *Fowler v. Wolff*, a plaintiff had brought a civil rights action against three Nebraska officials concerning a parole dispute. 479 F.2d 338, 340 (8th Cir. 1973). This action was dismissed on the merits, and the plaintiff then brought a second action against two of the original defendants and two different Nebraska officials, including a new claim that was not discussed by the district court in the previous action. The Eighth Circuit affirmed the dismissal of the plaintiff's second action, finding "the relationship of [the two new defendants] to the parties sued in the [previous] action is so close that their addition cannot change the fact that this present action is repetitious and barred by res judicata." 479 F.2d 338, 340 (8th Cir. 1973).

More recently, the Eighth Circuit noted that "the one 'cogent argument in favor of non-mutual claim preclusion is that the party to be precluded should have joined his new adversary in the original litigation.'" *Elbert*, 903 F.3d at 783 (quoting 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4464.1, at 702 (3d ed. 2017)). The Eighth Circuit applied this rationale in affirming the dismissal of a second civil rights case brought against sixteen new defendant police officers and including new constitutional claims, holding that there was "no good reason why [the plaintiff] should have a second chance to add these claims and defendants." *Id.* The claims all arose out of the same police raid and the plaintiff could have joined the other police officers as defendants in the first action but failed to do so. *Id.*

Here, with the exception of Resource, Kersey, Brinkmann, NewWay, and Flickinger, there is no indication that the remaining defendants were amenable to suit in Iowa, which is why this Court denied transfer of this case to Iowa two years ago. Plaintiff attempted to litigate all of the claims together in this Court, but the action initiated by Resource in Iowa proceeded simultaneously, despite plaintiff's efforts. Unlike *Fowler* and *Elbert*, here there is good reason to allow this proceeding to continue, but only as to the defendants who were not amenable to suit in Iowa. Resource, Kersey, Brinkmann, NewWay, and Flickinger were all amenable to suit in Iowa as residents there. Plaintiff had an opportunity to fully and fairly litigate his claims against Resource in Iowa, so res judicata now bars plaintiff's claims against Resource, Kersey, Brinkmann, NewWay, and Flickinger in this case. Resource, Kersey, Brinkmann, NewWay, and Flickinger are each dismissed from Count 1. Count 2 against Resource is dismissed in its entirety. Count 4 against Resource and NewWay is dismissed in its entirety.

**C.**     **Count 1**

Defendants Resource Converting, LLC; Tim Danley, and Rick Kersey have moved to dismiss Count 1 as barred by the economic loss doctrine. Defendants Sebright Products, Inc.; Gary Brinkman; NewWay Global Energy, LLC, David Wolf; Jerry Flickinger; and JWR, Inc., also move to dismiss Count I for this reason. Res judicata bars the claim in Count 1 against all defendants except Danley, Sebright, Wolf, and JWR.

The Court previously dismissed plaintiff's claim for negligent misrepresentation as barred by this doctrine, holding that what plaintiff termed "the fraud exception" to the economic loss doctrine does not apply to a claim of negligence. (Doc. 157). Now, defendants challenge plaintiff's intentional fraud claims for the first time under the same theory, claiming that the economic loss doctrine should also bar plaintiff's intentional fraud and unjust enrichment claims of Counts 1, 2, and 4. This Court therefore considers this question with regard to these specific counts for the first time. (Doc. 157 at 13).

Plaintiff has primarily relied on one case to argue that Missouri law provides an exception to the economic loss doctrine, for damages proximately caused by an

7

intentional, false representation, *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 767 (Mo. banc 2007) ("a party may not, by disclaimer or otherwise, contractually exclude liability for fraud in inducing that contract."). However, this case and its holding are clearly distinguishable from the instant case. The language upon which plaintiff relies in *Hess* refers to a special relationship between the parties, and the property owner's affirmative duty to disclose an EPA investigation of the property to potential buyers. *Id.* at 766-67. That court held that the provision in the contract that the owner was making "no representations, guaranties, or warranties, either written or implied, regarding the property," and that the property was being sold "in AS-IS condition with no express or implied representations or warranties by the seller or its agents," did not relieve the property owner of his legal duty to disclose known conditions about the property. *Id.* In *Hess*, there was a pre-contractual duty on the part of the property owner, and no party raised the economic loss doctrine so the Supreme Court did not consider it in that case. *Id.*[2]

In no other case has the Supreme Court of Missouri considered this specific question either. In dicta, however, it has noted that "many states, including Missouri, traditionally have restricted the availability of tort damages in cases alleging only economic loss," further noting the exception that "Missouri recognizes tort liability in professional negligence cases involving only economic loss," such as accounting malpractice cases. *Children's Wish Found. Int'l, Inc. v. Mayer Hoffman McCann, P.C.*, 331 S.W.3d 648, 652 n.2 (Mo. 2011) (citing *Bus. Men's Assur. Co. of Am. v. Graham*, 891 S.W.2d 438, 453 (Mo. Ct. App. 1994) ("In Missouri, a mere breach of contract does not provide a basis for tort liability, but the negligent act or omission which breaches the contract may serve as the basis for an action in tort. If the duty arises solely from the

---

[2] Similarly, in *Murphy v. Northwest Mut. Ins. Co.*, the U.S. District Court for the Western District of Missouri held that a fraud claim was permissible against an insurance agent because he was held to a professional standard of care and had a duty to disclose as he was acting as an investment advisor with a fiduciary relationship. 2005 WL 1421789, at *2 (W.D. Mo. June 13, 2005). Moreover, although it is not entirely clear, the *Murphy* case appears to apply Iowa, not Missouri law. *Id.*

contract, the action is contractual. The action may be in tort, however, if the party sues for breach of a duty recognized by the law as arising from the relationship or status the parties have created by their agreement.") (internal citations omitted)); *see also Crowder v. Vandendale,* 564 S.W.2d 879, 884 (Mo. 1978) (holding that liability in tort is only appropriate in cases seeking recovery for personal injury or property damage).

The Missouri Court of Appeals has directly addressed the issue, holding that "[a] fraud claim is permitted only if it arises from acts that are separate and distinct from the contract." *O'Neal v. Stifel, Nicolaus & Co., Inc.*, 996 S.W.2d 700, 702 (Mo. Ct. App. 1999). And, "[i]f the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010).

Similarly, this Court has repeatedly predicted that if confronted with the question, the Supreme Court of Missouri would bar a fraud claim for economic loss arising out of a contractual dispute. *See, e.g., OS33 v. CenturyLink Communs., L.L.C.*, No. 4:17 CV 2603 CAS, 2018 U.S. Dist. LEXIS 197540, at *16–*18 (E.D. Mo. Nov. 20, 2018); *Compass Bank v. Eager Road Associates, LLC*, 922 F.Supp.2d 818 (E.D. Mo. 2013); *Zoltek Corp. v. Structural Polymer Grp., Ltd.*, No. 4:08 CV 460 (CEJ), 2008 U.S. Dist. LEXIS 92714, 2008 WL 4921611, at *4 (E.D. Mo. Nov. 13, 2008), *aff'd sub nom. Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893 (8th Cir. 2010); *Self v. Equilon Enters., LLC,* 2005 U.S. Dist. LEXIS 17288, 2005 WL 3763533, at *11 (E.D. Mo. Mar. 30, 2005).

Accordingly, this Court has dismissed claims for unjust enrichment and fraud when the fraud claims are not independent of the contract, that is, when a plaintiff's claims for damages "are not above and beyond any mere disappointed commercial expectations or desire to enjoy the benefit of the [parties'] agreements." *Self v. Equilon Enters., LLC,* 2005 WL 3763533, at *11 (E.D. Mo. Mar. 30, 2005). For example, in one case, a plaintiff alleged that a harvesting machine he purchased did not work as advertised and that the seller was aware of the shortcomings of its machine at the time it advertised and sold the machine. *Flynn v. CTB, Inc.*, No. 1:12 CV 68 SNLJ, 2013 WL

28244, at *6 (E.D. Mo. Jan. 2, 2013). Applying Missouri law, the *Flynn* court held that the parties' relationship was defined by the contracts governing the sale and warranty of the harvesting machine, so the claim for unjust enrichment was prohibited by the economic loss doctrine. *Id.* (citing *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)).

The two critical factors in examining whether a fraud claim either arises out of a contract or is independent of it are (1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract and (2) whether the plaintiff has suffered additional damages outside the contract as a result of the alleged fraud. *Compass Bank v. Eager Road Associates, LLC*, 922 F.Supp.2d 818 (E.D. Mo. 2013). Pre-contractual misrepresentations may become part of the final contract. *Id.*

In this case, the contract was a licensing agreement between the plaintiff and Resource Converting, giving plaintiff the right to sell Resource's equipment during a specific time period and in a particular region. Plaintiff seeks rescission of the license agreements and return of the fees he paid per the contract and other damages to put him in the position he enjoyed prior to the transaction, in the nature of contractual consequential damages. (Doc. 319). He also seeks punitive damages and attorney fees. *See Zoltek Corp.*, 2008 U.S. Dist. LEXIS 92714, 2008 WL 4921611, at *4 (dismissing a claim including punitive damages as barred by the economic loss doctrine).

Although it is a close question, after reviewing the complaint in its totality, it appears that the subject matter of the alleged misrepresentations—the capabilities of the PAD system—was incorporated into the parties' licensing agreements. The contracts included a disclaimer of warranties and a limitation of liability, and the parties were free to negotiate warranty and other terms to account for possible defects in the PAD System's capabilities. (Doc. 319, Ex. 3). Plaintiff has not claimed any personal or property damages outside of the contracts as a result of the alleged fraud. Accordingly, Count 1 is barred by the economic loss doctrine.

**E.     Counts 5-8**

Defendants Sebright, Brinkmann, NewWay, Wolf, Flickinger, and JWR also challenge plaintiff's civil conspiracy claims in Counts 5-8. In its order granting leave to amend in part (Doc. 315), this Court observed that it has twice dismissed plaintiff's civil conspiracy claims on the ground that a principal cannot conspire with its agent. Previously, plaintiff had brought his civil conspiracy claim against all defendants, principals, and agents alike. Plaintiff's second amended complaint purported to remedy this defect by separating the claims into four groupings of conspirators:

**Count 5:     Resource, Sebright, JWR, and NewWay**

**Count 6:     Brinkmann, Danley, Kersey, Flickinger, and Wolf**

**Count 7:     Brinkmann, Danley, Kersey, and JWR**

**Count 8:     Danley, Kersey, Sebright, and JWR**

Plaintiff's second amended complaint alleges new facts regarding these defendants" knowledge about failed PAD Systems, concerted misrepresentations about these failures, and efforts to mislead plaintiff about business prospects and the parties to the deal. (Doc. 319 at ¶¶ 173, 186, 199, and 212).

Defendants argue that, because the allegations against each of these groups are identical and incorporated into each other, the claim again must fail, as this in effect alleges one conspiracy rather than four different conspiracies. However, the Court finds the claims must be dismissed for a different reason. Under Missouri law, civil conspiracy is not an independent cause of action, but rather allows a plaintiff to hold defendants jointly and severally liable for damages caused by actions taken in furtherance of the conspiracy. *Lewellen v. Universal Underwriters Ins. Co.*, 2019 WL 579635, at *9 (Mo. Ct. App. 2019); *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008); *Gettings v. Farr,* 41 S.W.3d 539, 540–41 (Mo. Ct. App. 2001). Accordingly, "if the underlying wrongful act alleged as part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well. . . . A case will be dismissed if the plaintiff failed to plead a cause of action for the underlying tort." *Envirotech*, 259 S.W.3d at 586-

87. Because the underlying claims are dismissed, the conspiracy claims also fail as a matter of law.

### III. ORDER

For the above reasons,

**IT IS HEREBY ORDERED** that the motions to dismiss (Docs. 329 and 340) are granted. Counts 1, 2, and 4-8 are dismissed with prejudice.

**IT IS FURTHER ORDERED** that the motions of defendants' Wolf and NewWay to dismiss (Docs. 338 and 342) are denied as moot.

**IT IS FURTHER ORDERED** that defendants' motion to strike plaintiff's prayer for attorney fees (Doc. 337) is denied as moot.

An appropriate Judgment Order is issued herewith.


    /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 19, 2019.