# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TOM DUNNE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:16 CV 1351 DDN |
| ) | |
| RESOURCE CONVERTING, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This diversity action is before the court on the motion of defendants Resource Converting, LLC (RCI), Tim Danley, and Rick Kersey (collectively "RCI Defendants") to dismiss plaintiff's third amended complaint (Doc. 479). Plaintiff opposes the motion and defendants have replied. The Court denies the motion to dismiss for the reasons set forth below.

## I. BACKGROUND

Plaintiff Tom Dunne, Jr. purchased licenses for RCI's non-thermal, pulverizing, and drying system technology (PAD System), whose stated purpose was to convert municipal waste into "biomass and ultimately renewable fuels." Dunne alleges the capabilities of the PAD System were misrepresented to him. Two lawsuits ensued in federal district court, one in Iowa and one in this District.

Plaintiff Dunne alleges RCI, Tim Danley, Rick Kersey, Sebright Products, Inc., Gary Brinkmann, NewWay Global Energy, David Wolf, Jerry Flickinger, and JWR, Inc. targeted Dunne to purchase licenses granting Dunne the exclusive right to sell the PAD System in the St. Louis, Missouri, area. On August 21, 2015, Dunne entered into five license agreements with RCI for the PAD System, agreeing to pay a total of $1,000,000.

Dunne made an initial payment of $400,000 but refused to make the final payment when he was never able to see an operational PAD System.

Approximately ten months after entering into the license agreements, Dunne sent the RCI defendants a letter seeking a refund of the $400,000 and threatening to sue in federal court in Missouri if the refund was not promptly issued.  Shortly thereafter, RCI filed suit against Dunne in Iowa state court, alleging a single claim for breach of the license agreements and seeking payment of the remaining $600,000.  Dunne removed the Iowa action to federal court in Iowa based on diversity (Iowa action) and sued the RCI defendants and others in this District.  In the Iowa action, Dunne pled an affirmative defense and counterclaim against RCI for fraudulent misrepresentation.  In the Iowa action, he also asserted equitable counterclaims for fraudulent inducement/rescission, unjust enrichment, and constructive trust.  Both cases proceeded on parallel paths.

Dunne filed his original complaint in this District on August 19, 2016.  (Doc. 1.)  On March 15, 2017, he filed an amended complaint.   (Doc. 113.)  This Court stayed the case pending resolution of the Iowa lawsuit.  (Doc. 292.)

In May 2018, the Iowa case went to trial on RCI's claim for damages for breach of contract and Dunne's counterclaim for damages for fraudulent misrepresentation.  The Iowa jury returned a verdict finding both that Dunne breached the license agreements and that RCI fraudulently misrepresented the PAD System.  The jury awarded no compensatory damages to RCI or Dunne but awarded Dunne $200,000 in punitive damages.  Following post-trial motions, the Iowa court entered an order that upheld the jury's verdict, dismissed Dunne's counterclaims for equitable relief, and awarded Dunne attorney's fees and costs. *Resource Converting, LLC v. Dunne,* No. 16-cv-470 (S.D. Iowa).  Both parties appealed.

After the Iowa trial, this Court granted Dunne leave to file a second amended complaint, asserting claims for fraudulent misrepresentation, fraudulent inducement, negligent misrepresentation, unjust enrichment, and civil conspiracy.  (Docs. 315, 319.)  This Court dismissed the claims, concluding Dunne's claims were barred by both claim preclusion and the economic loss doctrine.  (Doc. 385.)  Dunne appealed.  The Eighth Circuit affirmed the Iowa judgment.  It reversed this Court's dismissal, holding this Court

2


erred in applying federal rather than Iowa law on claim preclusion and in applying the economic loss doctrine to bar Dunne's claim for negligent misrepresentation. *Dunne v. Resource Converting, LLC*, 991 F.3d 931 (8th Cir. 2021).

This Court granted plaintiff leave to file a third amended complaint, the operative complaint now before the Court.  (Doc. 477.)  In Count I, plaintiff asserts a claim for fraudulent misrepresentation/concealment against defendants Brinkmann, Kersey, Danley, Wolf, Flickinger, Sebright, JWR, and NewWay.  In Count II, he asserts a claim for negligent misrepresentation against defendants Brinkmann, Kersey, Danley, Wolf, Flickinger, Sebright, JWR, and NewWay.  Counts III-VI assert claims for civil conspiracy against various groupings of defendants:  Count III against defendants RCI, Sebright, JWR, and NewWay;  Count IV against defendants Brinkmann, Danley, Kersey, Flickinger, and Wolf; Count V against defendants Brinkmann, Danley, Kersey, and JWR; and Count VI against defendants Danley, Kersey, Sebright, and JWR.

## II. DISCUSSION

The RCI Defendants move to dismiss the third amended complaint on the grounds that (1) the conspiracy counts fail to state a claim; (2) the claims are barred by res judicata; and (3) the claims are barred by the first-to-file rule.  (Doc. 483.)

A complaint fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For a complaint to state a plausible claim for relief requires the plaintiff to allege the circumstances of the alleged incident, and in reviewing the complaint the Court is required to draw upon its experience and common sense. *Id.* at 679.  The Court must assume the well-pleaded facts are true, but the Court does not have to accept as true merely general statements about what the law requires or prohibits. *Id.* at 678 ("Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements" are not enough) (citing *Twombly*, 550 U.S. at 555).

### Res Judicata / Claim Preclusion

Defendants argue the action is barred by res judicata because (1) Danley, as Vice President of Business Development, and Kersey, as Chief Executive Officer, are privies of RCI; and (2) plaintiff had a full and fair opportunity to litigate his claims in the Iowa action. They argue the third amended complaint alleges Danley and Kersey had an agency relationship with RCI, their principal, sufficient to establish privity under Iowa law. They also contend plaintiff had the opportunity to fully and fairly litigate all claims against Danley and Kersey in the Iowa action for three reasons: (1) plaintiff was compelled to raise a cause of action against the RCI Defendants in his Iowa counterclaim; (2) plaintiff had personal jurisdiction over the RCI Defendants and could have named all RCI Defendants regarding all Missouri claims raised in the Iowa action; and (3) alternatively, the rules of claim preclusion would still bar plaintiff's claims based on the vicarious-liability relationship of Kersey and Danley to RCI.

Defendants further argue plaintiff was compelled to raise his claims against them in his Iowa counterclaim and that RCI consented to jurisdiction regarding any counterclaim plaintiff could have raised in the Iowa action by filing suit based on this subject matter in Iowa. They argue personal jurisdiction existed in Iowa over RCI by filing suit based on the subject matter in Iowa and by consent before plaintiff filed his counterclaim. They argue personal jurisdiction existed over Danley and Kersey via Kersey's citizenship as a resident of Iowa at the time plaintiff filed his counterclaim, the alleged contacts, by consent before plaintiff filed his counterclaim, and by the closely related party doctrine.

The RCI Defendants argue that even in the absence of personal jurisdiction, Danley and Kersey's vicarious-liability relationship with RCI bars plaintiff's claims. They contend that allowing plaintiff to sue them here would be an injustice, potentially lead to a windfall to plaintiff, and constitute a second bite of the apple, in contravention of Iowa public policy. They note that in this case plaintiff has alleged Danley and Kersey had positions of employment with RCI sufficient to establish a relationship of vicarious liability. Therefore

4

the Iowa judgment has preclusive effect as to the amount of the damages, which was $0 in compensatory damages,  (Doc. 330-4), as there were no limitations on the competence of the Iowa Court, nor were there different rules regarding the measure of damages pleaded or argued.  They contend that since plaintiff would be limited to $0 against Kersey or Danley, his causes of action against them fail.  They argue that regardless of jurisdiction, plaintiff would be limited to the same compensatory award with respect to not only the RCI Defendants, but also with respect to the remaining non-RCI defendants.

Plaintiff counters that claim preclusion does not apply.  He argues that despite being forced to litigate in the Iowa forum, he prevailed against RCI, with the jury finding that RCI had committed fraud in convincing him to enter the licenses.  He argues that under Iowa law, he has the right to choose to bring claims against anyone who is not a defendant in the prior litigation in whatever forum he chooses and that he cannot be punished for exercising that choice when he was successful in the first litigation in which he was forced to participate.  He argues that under Iowa Rule of Civil Procedure 1.241, addressing compulsory counterclaims, he was not required to bring any claims against a non-party in the Iowa action, including Danley and Kersey, because they were not an "opposing party" within the meaning of the Rule.

As to defendants' argument that Danley and Kersey are privies of RCI and, therefore, res judicata applies, and that the Iowa court had personal jurisdiction over Danley and Kersey, plaintiff contends neither argument is relevant because under Iowa law he, as a successful litigant on a counterclaim, was under no obligation to file a claim against any party that was not a party to the prior suit.

The Court agrees with plaintiff.  One federal district court states:

> Under Iowa Rule of Civil Procedure 1.241, a party who fails to raise a compulsory counterclaim loses the claim. *Schaefer v. Putnam*, 841 N.W.2d 68, 74 (Iowa 2013) (citing Iowa R. Civ. P. 1.241). Under Iowa law, "[a] compulsory counterclaim is a claim that arises out of the same transaction or occurrence that is the basis of the opposing party's claim if the following are true: (1) the claim is then matured, (2) the claim is not the subject of any other pending action, (3) the claim is held by the pleader against the opposing party, and (4) the claim does not require the presence of necessary parties over whom the court cannot acquire

5

> jurisdiction." Id. at 74-75 (citing Iowa R. Civ. P. 1.241; *Harrington v. Polk Cnty. Fed. Savs. & Loan Ass'n of Des Moines*, 196 N.W.2d 543, 545 (Iowa 1972)). This rule is based on Federal Rule of Civil Procedure 13, which provides that a counterclaim is compulsory if it arises out of the same transaction or occurrence and does not require adding another party over whom the court cannot acquire jurisdiction. *See In re Estate of Hoelscher*, 249 Iowa 444, 449, 87 N.W.2d 446 (1958); *see also Graham v. Baker*, 447 N.W.2d 397, 401 (Iowa 1989) (indicating that Federal Rule of Civil Procedure 13 is analogous to Iowa's compulsory counterclaim rule); Fed. R. Civ. P. 13(a). As such, "the interpretation by Federal courts of the Federal rule is highly persuasive." Id. at 450.

*Just in Time Supplier, Inc. v. Sioux Honey Ass'n Coop.,* No. 18 cv 856-MMA (JLB), 2018 U.S.Dist. LEXIS 100179, at *7–8 (S.D. Cal. June 14, 2018).

Under Iowa law, Dunne, a successful defendant on a counterclaim, is under no obligation to file a claim against any entity or person that was not a party to the prior suit. *Graham v. Baker*, 447 N.W.2d 397, 401 (Iowa 1989); *see also Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 402 (Iowa 1982) (fact that defendant "was not a party in the 1969 litigation" in which the plaintiff was successful was "alone sufficient to deny it the benefit of the res judicata doctrine").

With respect to privy status, defendants Danley and Kersey's assertions that they are privies with RCI fail. Iowa law defines a "privy" as "one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998). Defendants do not provide a broader definition of privy, or any legal authority, to demonstrate how privy status is established here, and seem to apply a general definition to include anyone associated with a prior case. As Danley and Kersey did not "acquire an interest in the subject matter" by inheritance, succession or purchase, they are not privies under Iowa law. Also, assuming *arguendo* that Danley and Kersey were privies of RCI, the result would not be to dismiss the claims against them, but to enter judgment against them individually for the amount awarded by the Iowa jury and affirmed on appeal. *See e.g., Shivvers v. Hertz Farm Mgmt., Inc.,* 595 N.W.2d 476, 481 (Iowa 1999) (defendants in the second action stood in privity with the

6

defendant in the prior action and would have been liable to plaintiff if the prior-action defendant was liable.) Based on the above, defendants' motion to dismiss plaintiff's claims as barred by res judicata is denied.

### Issue Preclusion / Collateral Estoppel

Defendants Danley and Kersey next contend that Dunne is precluded from recovering any monetary award against them because they are in a vicarious relationship with RCI, and the Iowa jury did not award compensatory damages. Doc. 483 at 15–16. Plaintiff counters that issue preclusion does not apply.

Issue preclusion, or collateral estoppel, "prevents a party to a prior action in which a judgment has been rendered from relitigating in a subsequent action issues raised and resolved in the previous action." *Brown v. Kassouf*, 558 N.W.2d 161, 163 (Iowa 1997). The doctrine serves a dual purpose: (1) it protects litigants from the "vexation of relitigating identical issues with identical parties or those persons with a significant connected interest to the prior litigation," and (2) it prevents unnecessary litigation thereby furthering the interest of judicial economy and efficiency. *American Family Mut. Ins. Co. v. Allied Mut. Ins. Co.,* 562 N.W.2d 159, 163 (Iowa 1997) (quoting *State ex rel. Casas v. Fellmer,* 521 N.W.2d 738, 740–41 (Iowa 1994)).

Under Iowa law, four prerequisites must be satisfied for issue preclusion to apply: (1) the issue determined in the prior action and the present issue are identical; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the prior action's disposition; and (4) the determination made of the issue in the prior action was necessary and essential to the resulting judgment. *American Family*, 562 N.W.2d at 163–64; *Brown*, 558 N.W.2d at 163. Additionally, a status test must also be met—there must be mutuality of parties (the parties must be the same) or there must be privity "between the party against whom issue preclusion is invoked and the party against whom the issue was decided in the first litigation." *Brown,* 558 N.W.2d at 163. The definition of privity is the same as that used for claim preclusion. *Penn*, 577 N.W.2d at 398.

Unlike claim preclusion, issue preclusion does not require mutuality of parties if it is being invoked defensively against a party so connected to the former action as to be

7

bound by that resolution. *Brown*, 558 N.W.2d at 163. ''Defensive use'' means: ''[A] stranger to the judgment [in the former action], ordinarily the defendant in the second action, relies upon [that] judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense.'' *Id.* at 164 (quoting *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981)).

Here, the RCI Defendants are attempting to use the Iowa judgment defensively. Therefore, mutuality is not required; however, they must meet the other requirements for the doctrine to apply. The lack of special verdict form in the Iowa trial means that the Iowa action did not determine conclusively which of the defendants acted as agents of RCI. Therefore, Defendants' attempt to broaden the Iowa verdict to immunize any claim against them must be rejected. *See, e.g., Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 399 (Iowa 1998) (issue preclusion inapplicable where previous action determined malicious prosecution claim against another defendant but never addressed current defendant).

Issue preclusion also does not attach for the reason that the standard of proof on damages is different in the Iowa and Missouri actions. Issue preclusion is not appropriate in that instance. *See Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 379 (Iowa 1983) (preclusion as to damages is not appropriate when different rules govern the level of damages.) Here, the Iowa jury was instructed that it had to find the elements of the misrepresentation claim, including the amount of damages, by a preponderance of clear, satisfactory, and convincing evidence. (Doc. 527 at 15.) *See Condon Auto Sales & Serv., Inc. v. Siouxland Auto Auction, Inc.*, 715 N.W.2d 769, 2006 WL 778701 at *7 (Iowa Ct. App. 2006) ("The clear, satisfactory, and convincing evidence burden, which is required in a fraud case, is higher than the typical preponderance of the evidence and less than the beyond a reasonable doubt standard"). Under Missouri law, however, the burden of proof for a misrepresentation claim, even one based on fraud, is a preponderance of the evidence. *See Crawford v. Smith,* 470 S.W.2d 529, 531–32 (Mo. 1971); *Artilla Cove Resort, Inc. v. Hartley*, 72 S.W.3d 291, 296 (Mo. App. S.D. 2002). Because the burden of proof with respect to the amount of damages is substantially lower in Missouri than in Iowa, Dunne

is not precluded from seeking more than the amount of the Iowa compensatory damages award in the Missouri action. Defendants' argument based on this ground fails.

**First-to-File Rule**

The RCI defendants next argue that in the event the Court does not apply res judicata, this action should be dismissed based on the first-to-file rule. They state that here, even though RCI filed suit after receiving a demand letter from plaintiff, the case was not raised in bad faith as demonstrated in part by a judgment in favor of RCI on RCI's claim.

For the reasons discussed in its opinion denying similar motions earlier, the Court will not elaborate on this argument. (Doc. 97.) S*ee generally, Boatmen's First Nat'l Bank v. Kansas Pub. Emps. Ret. Syst.,* 57 F.3d 638, 641 (8th Cir. 1995) (first-to-file rule does not apply where the first-filing party filed suit only after the other party gave notice of its intention to file suit.)

**Conspiracy Counts III-VI**

Counts III through VI assert civil conspiracy claims. Count III asserts claims against Resource, Sebright, JWR, and NewWay. Count IV asserts claims against Brinkman, Danley, Kersey, Flickinger, and Wolf. Count V asserts claims against Brinkman, Danley, Kersey, and JWR. Count VI asserts claims against Danley, Kersey, Sebright, and JWR. Defendants argue plaintiff fails to state a claim on the conspiracy counts because he failed to sufficiently plead defendants were separate and distinct and there is no underlying tort on which a conspiracy can attach.

To establish a cause of action for civil conspiracy, a plaintiff must show: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) plaintiff was thereby damaged. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012). A conspiracy claim does not require that each conspirator have undertaken all aspects of the underlying tort. Rather, actions taken to assist others in commission of a tort are sufficient for a conspiracy claim to attach. *Id.* (conduct in aiding a co-conspirator to achieve this tortious interference supports the claim of civil conspiracy against him).

In the Iowa action, the jury determined that RCI committed fraud against Dunne. The conspiracy claims against Danley and Kersey in this case thus survive based on their alleged actions to assist RCI in committing the fraud. In addition, plaintiff asserts fraudulent and negligent misrepresentation claims against both Danley and Kersey individually. These, too, support a conspiracy claim. Accordingly, defendants' motion to dismiss plaintiff's conspiracy claims is denied.

**Attorneys' Fees and Damages**

Plaintiff has requested attorneys' fees in all counts and damages beyond the $400,000 he paid with respect to the two executed license agreements. Defendants argue that to the extent this Court does not dismiss the entire cause of action against them, the requests should be dismissed for failure to state a claim or should be stricken. Plaintiff argues that defendants cannot use a fraudulently induced contract to attempt to limit their liability to the individual who was proven to have been defrauded. He argues that even without a finding of fraud, defendants' argument would fail under Missouri law.

This Court agrees that the license agreements do not limit damages. Missouri law states "a party may not, by disclaimer or otherwise, contractually exclude liability for fraud in inducing that contract." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 767 (Mo. 2007) (bank's failure to disclose to purchaser of land that land was undergoing EPA investigation constituted common law fraud) (citing *Lollar v. A.O. Smith Harvestore Prods., Inc.,* 795 S.W.2d 441, 448 (Mo. App. W.D. 1990)). Defendants' motion to limit the amount of damages on this ground is denied.

Defendants also oppose plaintiff's request for attorneys' fees, arguing that both Iowa and Missouri follow the "American Rule," which provides absent certain exceptions, each litigant is to bear his own attorneys' fees. Absent a statute or other definitive authority concerning attorney's fees, the Court will this defer ruling on this issue until a later date.

### III.  ORDER

For the above reasons,

**IT IS HEREBY ORDERED** that motion of the RCI Defendants to dismiss **(Doc. 479) is denied.**

                                        /s/   David D. Noce  
                                  **UNITED STATES MAGISTRATE JUDGE**

Signed on January 20, 2022.