UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TOM DUNNE, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-cv-01351-SRC |
| | ) |
| RESOURCE CONVERTING, LLC | ) |
| et al., | ) |
| | ) |
| | ) |
| Defendants. | |

**<u>Memorandum and Order</u>**

In 2015, Plaintiff Tom Dunne purchased licenses for a non-thermal pulverizing and drying system, which the parties refer to as the PAD System. Various defendants and others represented to Dunne that the PAD system would convert municipal solid waste into biomass and then into renewable fuels. After Dunne suspected he'd been taken, Dunne stopped paying for licenses under his contract with Resource Converting, LLC ("RCI"). RCI then sued Dunne in Iowa for breach of contract. In that case, Dunne counterclaimed against RCI, alleging that RCI had fraudulently misrepresented the PAD System. Dunne also filed this case, asserting claims against various others arising out of Dunne's purchase of the licenses. While this case remained pending, the Iowa action proceeded to verdict and final judgment: the jury found that Dunne did not breach his contract with RCI and that RCI had committed fraud, and awarded Dunne punitive damages but no compensatory damages.

Sebright Products, Gary Brinkmann, JWR, Jerry Flickinger, David Wolf, and NewWay Global (who refer to themselves as "the non-RCI Defendants") now move for summary judgment. Doc. 501 at 1 & n.1. They argue that under Iowa law, res judicata bars Dunne's

claims asserted against them because Dunne bases those claims on the same set of operative facts as his counterclaim in the Iowa action, and Dunne attempts to relitigate claims that he should have pursued in that case. *Id.* at 5–15. The Court finds that this case has close parallels to Dunne's counterclaim in the Iowa action, albeit in a different posture and with additional defendants. Under Iowa law, however, res judicata does not bar Dunne's claims against the non-RCI Defendants.

I.      **Background**

   A.      **Undisputed facts**

The Court finds the following facts undisputed for purposes of the non-RCI Defendants' motion for summary judgment. After months of conversations and negotiations, Dunne entered into five license agreements with RCI for the PAD System, in which he agreed to pay a total of $1,000,000 due in two installments. Doc. 477 at ¶¶ 69, 72; doc. 477-3. These agreements provided him with the exclusive right to sell the PAD System within the St. Louis, Missouri, area. *See* doc. 477-3. In August 2015, Dunne paid the first installment of $400,000. Doc. 477 at ¶ 69. But he never made the second installment of $600,000. *See* doc. 477. After Dunne failed to pay, two lawsuits ensued: the case in Iowa and this case.

These cases have a long and tortured history. One has been tried to verdict; the other dismissed; both have been appealed; and, the two originally assigned trial-court judges have since retired. To put this case in proper context, the Court explains in some detail that history.

   B.      **District-court proceedings**

The Court takes judicial notice of the public records in the Iowa action. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005). In July 2016, RCI sued Dunne in Iowa state court for breach of contract, which Dunne removed

to the Southern District of Iowa on August 19, 2016.  Doc. 503-1; doc. 503-2; doc. 626 at ¶¶ 1–2.  The case was assigned to Honorable John A. Jarvey, then Chief United States District Judge.  Doc. 432 at 8.  That same day, Dunne filed this lawsuit in the Eastern District of Missouri, which was assigned to the Honorable David D. Noce, then United States Magistrate Judge.  Doc. 1.  Dunne claimed, among other things, that the defendants fraudulently and negligently misrepresented the PAD System and conspired to defraud him.  *See id.*  Shortly after filing his complaint, Dunne filed several counterclaims against RCI in the Iowa action, including that RCI fraudulently misrepresented the PAD System.  Doc. 503-3 ¶¶ 22–28; doc. 626 at ¶ 3.  As he admits, Dunne premised his fraudulent-misrepresentation claims in both cases on identical allegations.  Doc. 626 at ¶¶ 5–11, 13–14.

  Parties in both cases unsuccessfully attempted to transfer the cases to one district.  Judge Noce[1] declined to transfer this case to the Iowa court because the convenience of the parties witnesses and the interest of justice weighed in favor of keeping the case in this district.  Doc. 97 at 3–5.  Chief Judge Jarvey declined to transfer the Iowa action to this district because the license agreements included a forum-selection clause.  *Resource Converting, LLC v. Dunne*, 4:16-cv-00470-JAJ-SBJ, doc. 18 at 5.  Thus, the two actions proceeded separately.

  In this case, the defendants moved to dismiss Dunne's claims.  Docs. 35, 48, 51, 57.  After determining that Missouri law governed Dunne's claims, doc. 107 at 4, Judge Noce dismissed several claims for failure to state a claim and granted Dunne leave to amend his complaint, *id.* at 16.  After Dunne amended his complaint, doc. 113, the defendants once again challenged his claims in motions to dismiss, docs. 122, 124, 127, 129, 135.  Judge Noce in part granted the motions, explaining that Dunne had again failed to state several claims.  Doc. 157 at

---

[1] For sake of clarity, the Court refers to Judge Noce as "Judge Noce" and to the undersigned as "the Court."

3

8–21. Judge Noce allowed only three of Dunne's claims to proceed: fraudulent misrepresentation against all defendants, fraudulent inducement against RCI, and unjust enrichment against RCI and NewWay Global. *Id.* at 22.

As this case proceeded through discovery, the trial date of the Iowa action eventually drew near. Judge Noce denied the RCI Defendants' motion to stay this case until the resolution of that trial. Doc. 248 at 4–5. Judge Noce explained that substantial reasons existed for not staying this case, including that a decision favorable to RCI in the Iowa action might not resolve Dunne's claims against the other defendants in this case. *Id.* This case therefore continued with discovery, and the Iowa action proceeded to a jury trial in May 2018. Doc. 503-5.

At trial in the Iowa action, RCI and Dunne submitted two claims to the jury: RCI's breach-of-contract claim and Dunne's fraudulent-misrepresentation counterclaim. Doc. 626 at ¶¶ 15–16; doc. 503-5 at 1. The jury found in favor of Dunne on both claims. Doc. 626 at ¶¶ 15–16; doc. 503-5 at 1. It awarded him $0 in compensatory damages and $200,000 in punitive damages. Doc. 626 at ¶¶ 15–16; doc. 503-5 at 1. After a round of post-trial motions, both RCI and Dunne appealed to the Eighth Circuit. *Resource Converting, LLC v. Dunne*, 4:16-cv-00470-JAJ-SBJ, docs. 264, 265, 267.

Following the trial in the Iowa action, Judge Noce granted Dunne leave to amend his complaint to re-add several counts of civil conspiracy. Doc. 315. Dunne amended his complaint accordingly. Doc. 319. The defendants then moved to dismiss this case in its entirety. Docs. 329, 338, 340, 342. Judge Noce granted those motions and dismissed all claims with prejudice. Doc. 385. When addressing RCI, Richard Kersey, and Tim Danley's ("the RCI Defendants") motion to dismiss, Judge Noce dismissed Dunne's claims against defendants that were amenable to suit in Iowa based on federal res judicata principles. *Id.* at 7. But, because it was unclear at

4

the time whether other defendants were amenable to suit in Iowa, he concluded that res judicata did not bar the claims against the other defendants. *Id.* Judge Noce then dismissed Dunne's fraudulent-misrepresentation claim based on Missouri's economic loss doctrine, *id.* at 7–10, and dismissed Dunne's civil-conspiracy claims because those claims failed as a matter of law since Judge Noce had dismissed the claims alleging the underlying wrongful act, *id.* at 11–12. Dunne appealed. Doc. 416.

      C.     **Appellate proceedings**

The Eighth Circuit consolidated the two actions for purposes of the appeal but addressed each case separately. *Dunne v. Resource Converting, LLC*, 991 F.3d 931, 936–44 (8th Cir. 2021). The Court discusses them separately here.

          1.     **Iowa action**

On appeal, Dunne alleged that Chief Judge Jarvey erred by failing to increase the compensatory damages award, dismissing his equitable counterclaims, and failing to award his full claim for attorneys' fees and costs. *Id.* at 937. RCI also claimed Chief Judge Jarvey erred, primarily arguing that the Circuit must strike the award of punitive damages because the jury had not awarded compensatory damages and that Chief Judge Jarvey should not have awarded Dunne fees and costs. *See id.* at 937–42. The Circuit rejected all of those arguments.

As to damages, the Circuit explained that Chief Judge Jarvey properly left the award of damages to the jury and properly instructed the jury on the question of compensatory damages. *Id.* at 937–38. The Circuit also explained that Iowa law permitted the jury to award punitive damages without awarding compensatory damages, and concluded that the award of punitive damages was not unconstitutionally excessive. *Id.* at 938–40. The Circuit, therefore, rejected both Dunne's and RCI's arguments regarding damages. *Id.* at 937–40. It also rejected Dunne's

5

alternative argument that he was entitled to an award of $400,000 under his equitable counterclaims.  *Id.* at 940.

Lastly, the Circuit addressed attorneys' fees and costs.  *Id.* at 940.  In the Iowa action, Dunne sought attorneys' fees incurred in both the Iowa action and this case.  *Id.*  Chief Judge Jarvey, however, had "declined to award any fees incurred in the Missouri action," "reduced the award of Iowa fees by half," and "reduced the requested amount of costs by half."  *Id.*  He reasoned that "the case did not present difficult or important issues," "Dunne's attorneys expended an unreasonable number of hours" on the case, and "the case was over-litigated."  *Id.* at 941–42.

The Circuit upheld Chief Judge Jarvey's decision, explaining that the "method used and reasons given by [Chief Judge Jarvey] for the reductions were well within [his] discretion," *id.* at 941, and his "finding that the case was over-litigated [was] supported by the evidence in the record and [was] not clearly erroneous."  *Id.* at 942.  The Circuit also found that evidence in the record supported Chief Judge Jarvey's observations of "the 'overkill' involved in defending against RCI's breach of contract claim, which was in 'stark contrast' to 'Dunne's disturbing lack of due diligence in investigating whether or not to purchase the licenses in the first place.'"  *Id.*  Further, the Circuit found that evidence supported the "difficulty" Chief Judge Jarvey had "in 'generat[ing] sympathy for Dunne as his lack of due diligence clearly showed that he is not the sophisticated business person that he claims to be.'"  *Id.* (alteration in original).  (As an aside, the Court acknowledges Chief Judge Jarvey's observations and, as to this case, shares Chief Judge Jarvey's concerns.)

6

### 2. Missouri action

The Circuit addressed Dunne's arguments that Judge Noce erred when he "(1) applied federal law instead of state law in [his] claim preclusion analysis; (2) applied the economic loss doctrine to his misrepresentation claims; and (3) awarded costs without an opportunity to respond." *Id.* The Circuit first held that Iowa law, rather than federal law, governs whether the Iowa-action judgment precluded Dunne's claims, and that the district court should consider that question under Iowa law in the first instance. *Id.* at 942–43. It then concluded that under Missouri law, the economic-loss doctrine does not bar Dunne's misrepresentation claims. *Id.* at 943. Lastly, the Circuit revived Dunne's civil-conspiracy claims because "the reasoning for dismissing the conspiracy claims no longer applie[d]." *Id.* at 943–44. After vacating Judge Noce's award of costs in favor of the RCI defendants, the Circuit remanded the case to the district court for further proceedings consistent with its opinion. *Id.*

### D. Post-appeal proceedings in this case

Following the Circuit's decision, Judge Noce allowed Dunne to file a third amended complaint raising claims of fraudulent misrepresentation, negligent misrepresentation, and civil conspiracy. Doc. 471 at 11; doc. 477. The non-RCI Defendants filed answers to the complaint, docs. 488, 489, 491, 492, while the RCI Defendants moved to dismiss the complaint on several grounds, docs. 479, 483. As relevant here, the RCI Defendants claimed that under Iowa law, res judicata barred Dunne's claims against them. Doc. 483 at 6–17. Judge Noce disagreed, finding that, under Iowa law, claim preclusion did not apply because Kersey and Danley lacked privity with RCI. Doc. 540 at 4–7. And issue preclusion did not apply because the Iowa action did not determine conclusively which of the defendants acted as RCI's agents, and different standards of proof governed damages in the two actions. *Id.* at 7–9. Accordingly, Judge Noce denied the

7

RCI Defendants' motion to dismiss.  *Id.*  The RCI Defendants then filed an answer to Dunne's third amended complaint.  Doc. 541.

In November 2021, the defendants filed several motions for summary judgment, docs. 495, 500, 504, 507, but Judge Noce suspended briefing on those motions until the later of his ruling on a motion for a protective order or Dunne's completion of Kersey and Danley's depositions, doc. 520.  Dunne had not completed those depositions, delayed in part by Danley's filing for bankruptcy, before Judge Noce retired after nearly forty-seven years of distinguished service on the bench.  When Judge Noce retired, this case was randomly assigned to the undersigned.  Doc. 593.  Following reassignment, the Court ordered Dunne and the non-RCI Defendants to complete briefing on the non-RCI Defendants' motions for summary judgment, and the parties did so.  Doc. 613 at 11; docs. 625, 626, 632, 627, 628, 631, 661, 662, 663, 672, 673, 677.  Before the Court now is the non-RCI Defendants' motion for summary judgment, which argues that under Iowa law, res judicata Dunne claims against them.  Doc. 500.

**II.    Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts.  *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Self-serving, conclusory statements without support are insufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. Discussion

The non-RCI Defendants argue that the favorable judgment Dunne received in the Iowa action precludes the claims he asserts against them in this case. Alternatively, they assert that issue preclusion bars Dunne from relitigating his damages. As explained below, the Court holds that the Iowa-action judgment does not have preclusive effect in this action under Iowa's res judicata principles, which include both claim preclusion and issue preclusion.

#### A. Iowa res judicata principles

The Circuit ruled in this case that "[w]hen a federal court sitting in diversity renders the first judgment, [the Court] appl[ies] the law of the forum state of that court" to determine whether res judicata bars a claim. *See Dunne*, 991 F.3d at 942. In this case, "Iowa's . . . rules govern." *Id.*

Iowa's "general rule of claim preclusion holds that a valid and final judgment on a claim bars a second action on the adjudicated claim or any part thereof." *Pavone v. Kirke*, 807 N.W.2d 828, 835 (Iowa 2011) (citation omitted). If properly invoked, claim preclusion applies not only to matters determined in the first litigation but to "all matters growing out of the claim" and "to

9

all relevant matters that could have been determined." *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998) (quotation and citation omitted).  Thus, even if the claims litigated in the first action did not explicitly include the claim raised in a second action, claim preclusion can bar the claim in the second action.  *Pavone*, 807 N.W.2d at 835.  A party, therefore, "must try all issues growing out of a claim at one time and not in separate actions." *Bennett v. MC No. 619, Inc.*, 586 N.W.2d 512, 517 (Iowa 1998).  This both promotes judicial economy and efficiency, *Penn*, 577 N.W.2d at 398, and prevents a plaintiff from getting a "second bite" at the apple "simply by alleging a new theory of recovery for the same wrong," *Bennett*, 586 N.W.2d at 517.

Issue preclusion, on the other hand, "prevents a party to a prior action . . . from relitigating" only those "issues raised and resolved in the previous action." *Penn*, 577 N.W.2d at 398 (quotation omitted).  This "forwards similar purposes" as claim preclusion, *id.*, by preventing "the vexation of relitigating identical issues with identical parties or those persons with a significant connected interest to the prior litigation," and by promoting "judicial economy and efficiency by preventing unnecessary litigation," *Clark v. State*, 955 N.W.2d 459, 464–65 (Iowa 2021) (quotations omitted).  "Issue preclusion also promotes public faith in the judicial system by avoiding two authoritative but conflicting answers being given to the very same question." *Id.* at 465 (quotation omitted).

A party asserting claim preclusion must show that "(1) the parties in the first and second action are the same parties or parties in privity, (2) there was a final judgment on the merits in the first action, and (3) the claim in the second suit could have been fully and fairly adjudicated in the prior case (i.e., both suits involve the same cause of action)." *Pavone*, 807 N.W.2d at 836 (citing *Arnevik v. Univ. of Minn. Bd. of Regents*, 642 N.W.2d 315, 319 (Iowa 2002)).  For issue

10

preclusion to apply, "(1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment." *Clark*, 955 N.W.2d at 465–66 (citation omitted).  As explained below, these basic rules of claim and issue preclusion have various contours that, when applied to the facts of this case, render them inoperative here.

Claim- and issue-preclusion rules differ depending on which party invokes the doctrines, and the circumstances in which the party asserts them.  Terminology is therefore important. "Mutual" claim or issue preclusion is preclusion invoked by a party in the first action or its privies to that judgment.  "Nonmutual" claim or issue preclusion is preclusion invoked by someone who was not a party or privy to the first action.  "Offensive" use of the doctrines refers to the use of the former litigation as a "sword"—meaning, a new plaintiff uses the prior judgment against a defendant who was a party to the former litigation.  *See id.* at 464–65; *Shivvers v. Hertz Farm Mgmt., Inc.*, 595 N.W.2d 476, 481 (Iowa 1999).  "Defensive" use refers to "a stranger to the judgment" (i.e., a nonparty in the first action) invoking the judgment as a "shield" against a party or its privies to the first judgment.  *Clark*, 955 N.W.2d at 464–65 (citation omitted).  A nonparty to the first litigation can also defensively use these doctrines against someone "so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution." *Penn*, 577 N.W.2d at 398 (citations omitted).

In this case, non-parties to the Iowa action—the non-RCI Defendants—assert claim and issue preclusion based on a judgment obtained by RCI in that action.  The judgment was in favor of Dunne, the party opposing preclusion.  Dunne of course was the defendant and

11

counterclaimant in the Iowa action and is the plaintiff here, meaning that he did not choose the forum in the Iowa action. As explained below, the Court finds that the non-RCI Defendants are privies of RCI. As such, defensive mutual claim preclusion provides the rules of decision here.

### B. Claim preclusion does not apply.

The question of whether the Iowa action has a preclusive effect on Dunne's claims against the non-RCI Defendants turns on two questions: (1) whether the non-RCI Defendants were in privity with RCI, and (2) whether the same rules of damages apply to Dunne's claims in the Iowa action (i.e., under Iowa law) as in this case (i.e., under Missouri law). As explained below, the Court finds that while the non-RCI Defendants were in privity with RCI, different rules of damages apply to Dunne's claims under Iowa law than Missouri law. Under Iowa's claim-preclusion rules, the Iowa action does not have a preclusive effect on this case.

#### 1. The non-RCI Defendants are in privity with RCI.

For claim-preclusion purposes, Iowa law defines a party in privity as "one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Id.* (citations omitted). Iowa courts have expanded this rather narrow definition to include nonparties in limited situations. For example, claim preclusion extends to nonparties who are in vicarious-liability relationships with one of the original parties. *Shivvers*, 595 N.W.2d at 481. The Court first addresses privity.

The non-RCI Defendants claim that Dunne's allegations demonstrate that they were in relationships with RCI that rendered them vicariously liable for one another's actions, and hence in privity for purposes of claim preclusion. *See* doc. 501 at 5–10; doc. 632 at 4–6. They argue that Dunne's civil-conspiracy claims demonstrate this best. Doc. 501 at 8.

12

When determining coconspirator privity, courts have assessed whether the circumstances justified such a finding rather than adopting a per-se rule on coconspirator privity. *See, e.g.*, *Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3d Cir. 1972) (finding privity between coconspirators when "essential allegations of the second complaint parallel[ed] those of the first" and "the sole material change in the later suit was the addition of certain defendants"); *Cahill v. Arthur Andersen & Co.*, 659 F. Supp. 1115, 1122–23 (S.D. N.Y. 1986) (finding privity between coconspirators when the plaintiff "had had a prior opportunity to raise all claims relating to the disputed transaction" and "[a]ll of the facts that are the basis of" the second suit "were known to plaintiff at the time of the earlier action"); *New York Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962, 970 (S.D. Tx. 2014) (Costa, Circuit Judge, sitting by designation) (extensively discussing coconspirator privity and holding that coconspirators were not in privity).

Analyzing the circumstances in this case, the Court finds that the non-RCI Defendants are in privity with RCI based on their alleged coconspirator relationship. Dunne's allegations in his fraudulent and negligent misrepresentation claims—which serve as the allegations of wrongful conduct supporting his civil-conspiracy claims—are identical to the allegations he made in his fraudulent-misrepresentation claim against RCI in the Iowa action. Doc. 626 at ¶¶ 6–11, 13–14. Dunne knew the necessary facts serving as his basis for this suit when he litigated his counterclaim in the Iowa action, as demonstrated by Dunne's filing this case *before* he filed his fraudulent-misrepresentation counterclaim in the Iowa action. *See* docs. 1, 477, 503-3, 626. Based on identical factual allegations, he now seeks the exact same relief from the non-RCI Defendants as he sought from RCI. Doc. 626 at ¶¶ 6–11, 13–14. The only differences between the two actions, therefore, are that Dunne sues additional defendants in this action and that he alleges a conspiracy among the defendants. *See* docs. 1, 477, 503-3, 626.

13

The parties do not cite any cases analyzing co-conspirator privity, but the Court's own research found *New York Pizzeria*, which applies Texas law and is distinguishable but nonetheless instructive here.  In that case, the court extensively discussed privity among coconspirators and held that the coconspirators were not in privity with one another.  *Id.* at 970–71.  In the first action relevant to *New York Pizzeria*, Adrian Hembree sued the pizzeria for breach of contract.  *Id.* at 963–64.  The pizzeria, in turn, asserted several counterclaims against Hembree, including a conspiracy claim.  *Id.* at 964.  The court in the first action partially resolved the case in favor of Hembree on summary judgment.  *Id.*  The parties then reached a settlement, and the court dismissed the case with prejudice.  *Id.*

The following year, the pizzeria sued Hembree and several additional defendants in federal court.  *Id.*  The pizzeria's claims revolved around the same circumstance as the first action but were in part based on facts that came to light after the settlement of the first case.  *See id.* at 964–65.  The non-Hembree defendants eventually sought dismissal of the pizzeria's claims based on claim preclusion.  *Id.* at 965, 967.  In their view, they could invoke the judgment obtained in the first action for purposes of claim preclusion because the pizzeria alleged they were coconspirators with Hembree.  *Id.* at 967.

The court disagreed.  The court explained that courts must assess whether the circumstances justify a finding that the alleged coconspirators are in privity.  *Id.*  The court found that circumstances relating to the pizzeria's claims did not justify such a finding.  *Id.*  The court explained that, "[m]ost importantly, unlike all the cases . . . applying [nonmutual claim preclusion] in a coconspirator situation, this is not the second time that [the pizzeria] has filed a lawsuit alleging similar claims."  *Id.*  Rather, the pizzeria "previously litigated issues that [bore] a strong resemblance to its current claims" as counterclaims.  *Id.*  Meaning that like Dunne here,

14

the pizzeria had not chosen the forum of its earlier lawsuit or the time at which the suit was brought. *Id.*

Although *New York Pizzeria* and this case share an "unusual procedural history," *id.* at 971, they differ in a significant respect. In reaching its decision, the *New York Pizzeria* court emphasized that the non-Hembree defendants had not established that the claims against them could have been litigated in the prior case. *Id.* at 970. As a result, the second action did "not implicate the concerns of claim preclusion—protecting litigants from duplicative claims and promoting judicial economy." *Id.* at 971. Allowing the pizzeria to pursue claims in the second suit against the non-Hembree defendants could not implicate such concerns because the pizzeria "may not have been able to bring [those defendants] into the suit as third parties" in the first action. *Id.*

Unlike the non-Hembree defendants, however, the non-RCI Defendants *were* amenable to suit in the Iowa action. Dunne concedes as much by failing to rebut the point. Doc. 501 at 12–14 (establishing that the Iowa district court had jurisdiction over the non-RCI Defendants); doc. 625 at 8 (failing to dispute the point and arguing only that jurisdiction is irrelevant). Moreover, adding the non-RCI Defendants to the Iowa action would not have "greatly expanded the nature of that case." *N.Y. Pizzeria*, 53 F. Supp. 3d at 971 n.8. The allegations underpinning Dunne's misrepresentation claims against the non-RCI Defendants are *identical* to the allegations Dunne submitted to the jury in the Iowa action regarding RCI's fraudulent misrepresentations. Doc. 626 at ¶¶ 6–11, 13–14. Based on these circumstances, the Court finds that the non-RCI Defendants are in privity with RCI.

The Court notes that Iowa law recognizes an extension of claim preclusion to parties not in privity; but that limited extension applies only to (a) situations such as principal and agent and

15

indemnitor and indemnitee, and (b) when the judgment at issue was unfavorable to the party against whom claim preclusion is asserted. *Hawley*, 45 N.W.2d at 516–18; s*ee also, e.g.*, *Stucker v. Muscatine Cnty.*, 87 N.W.2d 452, 495 (Iowa 1958). Even if Dunne's allegations establish an agency relationship between RCI and the non-RCI Defendants, the non-RCI Defendants' alternative argument based on this extension is inapposite. The jury in the Iowa action found that RCI defrauded Dunne, i.e., a judgment *favorable to* Dunne. For this reason, the extension noted in *Hawley* does not apply here. As explained above, however, the Court holds that the non-RCI Defendants have established their privity with RCI based on vicarious-liability relationships.

### 2. The Iowa action does not have preclusive effect in this case.

When determining the preclusive effect of a prior judgment on parties in privity based on a vicarious-liability relationship, Iowa follows the Restatement (Second) of Judgments § 51. *Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 378–79 (Iowa 1983). Section 51 provides in relevant part:

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other:
>
> (1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:
>
>     (a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or
>
>     (b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.
>
> (2) A judgment in favor of the injured person is conclusive upon him as to the amount of his damages unless:

> (a) There were limitations on the competence of the forum in the first action preventing him from obtaining the full measure of damages, as stated in § 26(1)(c), or he exercise the option stated in § 26(1)(e) to divide his claim; or
>
> (b) Different rules govern the measure of damages in the two actions.

§ 51(1)–(2). Thus, in cases such as this one where the injured person (Dunne) obtained a *favorable* judgment in the first action, section 51(2) governs. Under that provision, the favorable judgment does not "extinguish[] any claim [Dunne] has against the" persons who were not parties in the first action; it "is preclusive as to nonparties . . . only as to the extent of damages." § 51(1)–(2). This is because a judgment favorable to an injured party on "the question of liability[], is adverse to him insofar as it determines that his damages did not exceed those awarded. It is therefore ordinarily conclusive as a ceiling on the damages that may be recovered in the second action." Restatement (Second) of Judgments § 51 cmt. d. Even a favorable judgment is not preclusive if "different rules govern the measure of damages in the two actions." *Kimmel*, 339 N.W.2d at 379 (quoting § 51(b)(2)).

Dunne obtained a favorable judgment in the Iowa action. Accordingly, the damages award he received is conclusive as to the ceiling of damages he can obtain in this action, but only if the same rules govern the measure of damages in the two actions. *Id.*; § 51(2)(b). Dunne claims that this exception applies because different standards of proof govern the damages awards, as Judge Noce ruled in his denial of the RCI Defendants' motion to dismiss. Doc. 625 at 5–6, 9–12; doc. 540 at 8–9. The Court agrees with Judge Noce's conclusion.

Although Iowa law governed the substantive legal questions raised in the Iowa action, the parties in this case have advocated throughout that Missouri law governs the substantive legal questions raised in this case. *See* doc. 107 at 4 n.1. Judge Noce consistently determined that Missouri law applies, *see, e.g., id.* at 4, and the Circuit applied Missouri law when determining

17

whether Judge Noce properly dismissed Dunne's misrepresentation and civil-conspiracy claims, *Dunne*, 991 F.3d at 943. The Court continues to apply Missouri law to the substantive legal questions raised in this case.

Iowa and Missouri law on the measure of damages available to Dunne differ in two significant ways. First, as Judge Noce determined, different standards of proof govern the damages available in the Iowa action and this case. *See* doc. 540 at 8–9. In the Iowa action, Dunne had to prove damages for his fraudulent misrepresentation claim by "a preponderance of clear, satisfactory, and convincing evidence." *Iowa ex rel. Miller v. Rahmani*, 472 N.W.2d 254, 257 (Iowa 1991). In this case, Missouri law requires Dunne to establish damages by the lower standard of a preponderance of the evidence. *See Crawford v. Smith*, 470 S.W.3d 529, 531–32 (Mo. 1971); *Artilla Cove Resort, Inc. v. Hartley*, 72 S.W.2d 291, 295–96 (Mo. Ct. App. 2002). Iowa's standard, therefore, is not only "higher than" but also "qualitatively" different than Missouri's standard. *Rahmani*, 472 N.W.2d at 257.

Second, the rules governing the availability, and therefore the measure, of punitive damages in Iowa and Missouri differ. Missouri adheres to the traditional rule that "actual or nominal damages must be recovered before punitive damages can be recovered." *Compton v. Williams Bros. Pipeline Co.*, 499 S.W.2d 795, 797 (Mo. 1973). In Iowa, a jury need not award a plaintiff in Iowa actual or compensatory damages to award him punitive damages. *Pringle Tax Serv., Inc. v. Knoblauch*, 282 N.W.2d 151, 154 (Iowa 1979); *Podraza v. City of Carter Lake*, 524 N.W.2d 198, 203 (Iowa 1994). The Iowa action demonstrates this rule: Dunne recovered $200,000 in punitive damages even though the jury awarded him no compensatory damages. *Dunne*, 991 F.3d at 937–40. The same result, however, could not occur under Missouri law. *See Compton*, 499 S.W.2d at 797.

Thus, although Dunne may recover the same type of damages in each case, different rules govern the measure of damages. *Kimmel*, 339 N.W.2d at 379. Accordingly, the Court holds that even though the non-RCI Defendants are in privity with RCI, the Iowa action does not have preclusive effect in this action.

### C. Issue preclusion does not apply.

The non-RCI Defendants alternatively argue that issue preclusion bars Dunne from litigating his damages in this case. As explained above, the law governing damages in each action differ significantly. Moreover, the Iowa action determined the damages Dunne sustained because of only RCI's fraud. It did not determine the damages Dunne sustained because of the non-RCI Defendants' alleged fraudulent and negligent misrepresentations. As a result, issue preclusion does not apply here. *See, e.g.*, *Weishaar v. Snap-On Tools Corp.*, 582 N.W.2d 177, 181 (Iowa 1998). The Court therefore holds that the Iowa action does not have preclusive effect on Dunne's damages in this case.

### IV. Conclusion

The Iowa action neither has preclusive effect as to Dunne's claims against the non-RCI Defendants nor determines the amount of damages Dunne sustained because of the alleged misrepresentations made by the non-RCI Defendants. Accordingly, the Court denies the non-RCI Defendants' [500] Motion for Summary Judgment.

So ordered this 5th day of January 2024.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE